## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SUSAN BUCK, ANITA BECKLEY,
RUBY ROBINSON, RITCHIE SWAGERTY,
and DANIEL VANDERKODDE,
on behalf of themselves and
all others similarly situated,

        Plaintiffs,                           Case No. 1:17-cv-203

v.                                         HON. PAUL L. MALONEY

MARY JANE M. ELLIOTT, P.C.,
BERNDT & ASSOCIATES, P.C.,
MIDLAND FUNDING LLC,
MIDLAND CREDIT MANAGEMENT, INC.,
ENCORE CAPITAL GROUP, INC., and
LVNV FUNDING LLC,

        Defendants.
_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

### INTRODUCTION

1.     Plaintiffs bring this class action against the defendant debt collectors, seeking damages and equitable relief, to redress Defendants' systemic violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.*, and the Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

2.     Defendants have filed thousands of false communications in Michigan courts and sent thousands of false communications to Plaintiffs and similarly situated consumers in connection with efforts to collect debts from them. Subsequent to obtaining judgments in collection lawsuits against Plaintiffs and putative class members, Defendants have collected and

attempted to collect postjudgment interest from Plaintiffs and putative class members at rates far exceeding those allowed by law, misrepresented the amounts owed by Plaintiffs and putative class members, collected money not owed by Plaintiffs and putative class members, and violated the FDCPA and Michigan law.

3.      Specifically, for judgments not "rendered on a written instrument," Michigan law explicitly and unambiguously allows for accrual and collection from Plaintiffs and the putative class members of postjudgment interest only "at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually," M.C.L. § 600.6013(8); however, Defendants have purported to accrue, attempted to collect, and did collect, interest far exceeding this statutory rate from Plaintiffs and the putative class members, causing substantial actual damage.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. §§ 1331 and 1337. This Court has supplemental jurisdiction regarding Plaintiffs' state law claims under 28 U.S.C. § 1367.

5.      Venue in this judicial district is proper because Defendants transact business here, the pertinent events took place here, and Plaintiffs reside here.

## THE PARTIES

6.      Plaintiff Susan Buck is a natural person residing in Kent County, Michigan. Ms. Buck is a "consumer" and "person" as the terms are defined and used in the FDCPA. Ms. Buck is a "consumer," "debtor," and "person" as the terms are defined and used in the MRCPA and MOC.

7.    Plaintiff Anita Beckley is a natural person residing in Kent County, Michigan. Ms. Beckley is a "consumer" and "person" as the terms are defined and used in the FDCPA. Ms. Beckley is a "consumer," "debtor," and "person" as the terms are defined and used in the MRCPA and MOC.

8.    Plaintiff Ruby Robinson is a natural person residing in Kent County, Michigan. Ms. Robinson is a "consumer" and "person" as the terms are defined and used in the FDCPA. Ms. Robinson is a "consumer," "debtor," and "person" as the terms are defined and used in the MRCPA and MOC.

9.    Plaintiff Ritchie Swagerty is a natural person residing in Kent County, Michigan. Mr. Swagerty is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mr. Swagerty is a "consumer," "debtor," and "person" as the terms are defined and used in the MRCPA and MOC.

10.    Plaintiff Daniel VanderKodde is a natural person residing in Kent County, Michigan. Mr. VanderKodde is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mr. VanderKodde is a "consumer," "debtor," and "person" as the terms are defined and used in the MRCPA and MOC.

11.    Defendant Mary Jane M. Elliott, P.C. ("Elliott") is a Michigan professional corporation, doing business at 24300 Karim Boulevard, Novi, Michigan 48375. Elliott is a law firm the primary business of which is the collection of consumer debts; i.e., debts incurred primarily for personal, family, or household purposes. Elliott uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Elliott regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Elliott is a "debt collector" as the term is defined and used in the FDCPA. Elliott is

a "regulated person" as the term is defined and used in the MRCPA.

12.     Defendant Berndt & Associates, P.C. ("Berndt") is a Michigan professional corporation, doing business at 30500 Van Dyke Avenue, Warren, Michigan 48093. Berndt is a law firm the primary business of which is the collection of consumer debts; i.e., debts incurred primarily for personal, family, or household purposes. Berndt uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Berndt regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Berndt is a "debt collector" as the term is defined and used in the FDCPA. Berndt is a "regulated person" as the term is defined and used in the MRCPA.

13.     Defendant Midland Funding LLC ("MF") is a Delaware limited liability company with its principal place of business at 3111 Camino Del Rio N, Suite 1300, San Diego, California 92108. The registered agent for MF in Michigan is CSC-Lawyers Incorporating Service (Company), 601 Abbott Road, East Lansing, Michigan 48823. MF is engaged in the business of purchasing and collecting defaulted and charged off consumer debts. MF uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. MF regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. MF is a "debt collector" as the term is defined and used in the FDCPA. MF is a "regulated person" as the term is defined and used in the MRCPA.

14.     Defendant Midland Credit Management, Inc. ("MCM") is a Kansas corporation with its principal place of business at 3111 Camino Del Rio N, Suite 1300, San Diego, California 92108. The registered agent for MCM in Michigan is CSC-Lawyers Incorporating Service (Company), 601 Abbott Road, East Lansing, Michigan 48823. MCM is engaged in the business of collecting defaulted and charged off consumer debts that are held in the name of Defendant

Midland Funding LLC. MCM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. MCM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. MCM is a "debt collector" as the term is defined and used in the FDCPA. MCM is licensed (Nos. 2401002426, 2401002428, 2401002429, 2401002431, 2401002703, 2401002817, and 2401002888) as a "collection agency" by the State of Michigan pursuant to the Michigan Occupational Code, M.C.L. § 339.901 *et seq.* MCM is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

15.     Defendant Encore Capital Group, Inc. ("Encore") is a Delaware corporation, with its principal place of business at 3111 Camino Del Rio N, Suite 1300, San Diego, California 92108. Encore is a publicly traded company. The registered agent for Encore is Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833. Encore is engaged in the business of purchasing and collecting defaulted and charged off consumer debts. Encore uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Encore regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Encore is a "debt collector" as the term is defined and used in the FDCPA. Encore is a "regulated person" as the term is defined and used in the MRCPA.

16.     MF and MCM are under common ownership. Both are subsidiaries of Encore. Encore is a publicly traded company. Encore's business involves: (a) securing funds from investors and lenders for the purpose of purchasing portfolios of delinquent consumer debts which are titled in MF; (b) devising the collection strategies used by MF, MCM and their collection attorneys and other agents to collect the debts; and (c) participating in and benefitting

from the debt collection activities complained of below.

17.     As used in this complaint, the term "Midland" refers to MF, MCM, and Encore collectively.

18.     Defendant LVNV Funding LLC ("LVNV") is a Delaware limited liability company. The registered agent for LVNV in Michigan is CSC-Lawyers Incorporating Service (Company), 601 Abbott Road, East Lansing, Michigan 48823. LVNV is engaged in the business of purchasing and collecting defaulted and charged off consumer debts. LVNV uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. LVNV regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. LVNV is a "debt collector" as the term is defined and used in the FDCPA. LVNV is a "regulated person" as the term is defined and used in the MRCPA.

## FACTUAL ALLEGATIONS

### I.    Plaintiff Susan Buck

19.     Ms. Buck had an Aspen MasterCard ("Aspen") account which she used to purchase goods or services for personal, family, and household purposes. Any resulting obligation of Ms. Buck to pay money was a "debt" as the term is defined and used in the FDCPA, MRCPA, and MOC.

20.     Ms. Buck's Aspen account went into default. The account was charged off and sold.

21.     Defendant MF purchased Ms. Buck's account.

22.     Defendant MCM, on behalf of MF, placed Ms. Buck's account with Defendant Elliott for collection.

23.     On or about March 5, 2008, Elliott filed a debt collection lawsuit on behalf of MF

and against Ms. Buck in the 62B District Court for the State of Michigan, Case No. 08-5376-GC ("Buck Lawsuit"). The complaint alleged a cause of action under an Account Stated theory. Specifically, the complaint stated, "Plaintiff's Assignor has completed performance and rendered an account stated; Affidavit attached." Attached to the complaint was an affidavit signed by Elizabeth Neu, an employee of MCM. The affidavit was used to assert an Account Stated claim against Ms. Buck. A copy of the State Court Complaint, and its attachment is attached hereto as *Exhibit 1.*

24.     On or about July 3, 2008, a default judgment was entered in the Buck Lawsuit on behalf of MF and against Ms. Buck in the amount of $844.21. Elliott, on behalf of MF, on the Default Request, Affidavit, Entry, and Judgment form that Elliott filed, stated: "The claim is not based on a note or other written evidence of indebtedness."

25.     In addition to Elliott's explicit representation to the court and to Ms. Buck that MF's claim was not based on a written instrument, the judgment was rendered only on an account stated theory, and thus was not rendered on a written contract, note, or negotiable instrument. A copy of the Default Judgment entered in the Buck Lawsuit is attached hereto as *Exhibit 2.*

26.     On or about September 8, 2009, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Buck Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1.  Plaintiff received judgment against defendant for $844.21 on July 3, 2008.
2.  The total amount of judgment interest accrued to date is $147.69. The total amount of postjudgment costs accrued to date is $26.54. The total amount of postjudgment payments and credits made to date is $60.00. The amount of unsatisfied judgment now due (including interest and costs) is $928.44.

On September 17, 2009, the state court clerk issued the Writ for Garnishment. A copy of the

Request and Writ for Garnishment is attached hereto as ***Exhibit 3.***

27.     Elliott served the Writ for Garnishment (Exhibit 3) on the Michigan Department of Treasury and Ms. Buck.

28.     On or about July 20, 2011, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Buck Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On July 3, 2008, the plaintiff received judgment against the defendant for: $844.21.
2. The total amount of judgment interest accrued to date is: $341.63.
   The total amount of postjudgment costs accrued to date is: $41.54.
   The total amount of postjudgment payments and credits made to date is: $60.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $1,137.38.

On July 26, 2011, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 4.***

29.     Elliott served the Writ for Garnishment (Exhibit 4) on the Michigan Department of Treasury and Ms. Buck.

30.     On or about September 28, 2012, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Buck Lawsuit, naming the Michigan Department of Treasury as garnishee, and represented in pertinent part:

1. On July 3, 2008, the plaintiff received judgment against the defendant for: $844.21.
2. The total amount of judgment interest accrued to date is: $469.04.
   The total amount of postjudgment costs accrued to date is: $62.54.
   The total amount of postjudgment payments made and credits to date is: $60.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $1,285.79.

On October 15, 2012, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 5.***

31.     Elliott served the Writ for Garnishment (Exhibit 5) on the Michigan Department of Treasury and Ms. Buck.

32.     Elliott and MF received payment in the amount of $170.00 in connection with the Writ for Garnishment (Exhibit 5).

33.     On or about September 24, 2013, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Buck Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On July 3, 2008, the plaintiff received judgment against the defendant for: $844.21.
2. The total amount of judgment interest accrued to date is: $574.40.
   The total amount of postjudgment costs accrued to date is: $83.54.
   The total amount of postjudgment payments made and credits to date is: $390.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $1,082.15.

On October 9, 2013, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 6.***

34.     Elliott served the Writ for Garnishment (Exhibit 6) on the Michigan Department of Treasury and Ms. Buck.

35.     Elliott and MF received payment in the amount of $216.00 in connection with the Writ for Garnishment (Exhibit 6).

36.     On or about September 18, 2014, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Buck Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On July 3, 2008, the plaintiff received judgment against the defendant for: $844.21.
2. The total amount of judgment interest accrued to date is: $673.22.
   The total amount of postjudgment costs accrued to date is: $42.00.
   The total amount of postjudgment payments made and credits to date is: $510.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is:

$1,019.43.

On October 21, 2014, the state court clerk issued the Writ for Garnishment. A copy of the

Request and Writ for Garnishment is attached hereto as ***Exhibit 7.***

37.     Elliott served the Writ for Garnishment (Exhibit 7) on the Michigan Department

of Treasury and Ms. Buck.

38.     Elliott and MF received payment in the amount of $233.00 in connection with the

Writ for Garnishment (Exhibit 7).

39.     On or about October 26, 2015, Elliott, on behalf of MF, filed a Request and Writ

for Garnishment in the Buck Lawsuit, naming the Michigan Department of Treasury as the

garnishee, and represented in pertinent part:

1. On July 3, 2008, the plaintiff received judgment against the defendant for: $844.21.
2. The total amount of judgment interest accrued to date is: $773.43.
   The total amount of postjudgment costs accrued to date is: $63.00.
   The total amount of postjudgment payments made and credits to date is: $959.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $691.64.

On December 15, 2015, the state court clerk issued the Writ for Garnishment. A copy of the

Request and Writ for Garnishment is attached hereto as ***Exhibit 8.***

40.     Elliott served the Writ for Garnishment (Exhibit 8) on the Michigan Department

of Treasury and Ms. Buck.

41.     Elliott and MF received payment in the amount of $321.00 in connection with the

Writ for Garnishment (Exhibit 8).

42.     On or about September 9, 2016, Elliott, on behalf of MF, filed a Request and Writ

for Garnishment in the Buck Lawsuit, naming the Michigan Department of Treasury as the

garnishee, and represented in pertinent part:

1. On July 3, 2008, the plaintiff received judgment against the defendant for: $844.21.
2. The total amount of judgment interest accrued to date is: $850.05.
   The total amount of postjudgment costs accrued to date is: $63.00.
   The total amount of postjudgment payments made and credits to date is: $989.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $768.26.

On October 10, 2016, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 9.***

43.     Elliott served the Writ for Garnishment (Exhibit 9) on the Michigan Department of Treasury and Ms. Buck.

44.     As of September 9, 2016, Elliott, on behalf of MF, stated that Ms. Buck still owed $768.26.

45.     If Elliott and Midland had charged Ms. Buck postjudgment interest at the rates dictated by M.C.L. § 600.6013, Ms. Buck would owe less than $100 to Midland.

46.     Elliott and MF have taken more money from Ms. Buck than is stated in the Writ for Garnishment (Exhibit 9).

47.     Elliott and MF have taken more money from Ms. Buck than is allowed by law, yet they claim and continue to collect and attempt to collect money from her in an amount exceeding $700.

48.     During the twelve months immediately prior to the filing of this Class Action Complaint, Elliott and Midland communicated to Ms. Buck that she owed postjudgment interest in an amount that exceeded the amount permitted by law.

49.     During the six years immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of MF, communicated to Ms. Buck that she owed postjudgment interest in an amount that exceeded the amount permitted by law.

50.     During the twelve months immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of MF, communicated to a third party that Ms. Buck owed postjudgment interest in an amount that exceeded the amount permitted by law.

51.     During the six years immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of MF communicated to a third party that Ms. Buck owed postjudgment interest in an amount that exceeded the amount permitted by law.

52.     Elliott and Midland charged Ms. Buck postjudgment interest at a rate greater than allowed by law.

53.     Elliott and Midland directly or indirectly collected or attempted to collect from Ms. Buck, money to which they were not entitled in the form of excessive postjudgment interest.

## II.     Plaintiff Anita Beckley

54.     Ms. Beckley had an Aspire Visa ("Aspire") account which she used to purchase goods or services for personal, family, and household purposes. Any resulting obligation of Ms. Beckley to pay money was a "debt" as the term is defined and used in the FDCPA, MRCPA, and MOC.

55.     Ms. Beckley's Aspire account went into default. The account was charged off and sold.

56.     Defendant MF purchased Ms. Beckley's account.

57.     Defendant MCM, on behalf of Defendant MF, placed Ms. Beckley's account with Defendant Elliott for collection.

58.     On or about September 15, 2008, Elliott filed a debt collection lawsuit on behalf of MF and against Ms. Beckley in the 61st District Court for the State of Michigan, Case No. 08-GC5847 ("Beckley Lawsuit"). The complaint alleged a cause of action under an Account Stated

theory. Specifically, the complaint stated, "Plaintiff's assignor has completed performance and rendered an account stated; Affidavit attached." Attached to the complaint was an affidavit signed by Vicky Weisz, an employee of MCM. The affidavit was used to assert an Account Stated claim against Ms. Beckley. A copy of the State Court Complaint, and its attachment is attached hereto as ***Exhibit 10.***

59.     On or about February 9, 2009, a consent judgment was entered in the Beckley Lawsuit on behalf of MF and against Ms. Beckley in the amount of $1,355.10. The judgment was rendered only on an account stated theory, and thus was not rendered on a written contract, note, or negotiable instrument. A copy of the consent judgment entered in the Beckley Lawsuit is attached hereto as ***Exhibit 11***.

60.     On or about October 25, 2011, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Beckley Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On February 9, 2009, the plaintiff received judgment against the defendant for: $1,355.10.
2. The total amount of judgment interest accrued to date is: $468.83.
   The total amount of postjudgment costs accrued to date is: $42.00.
   The total amount of postjudgment payments and credits made to date is: $195.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $ 1,540.93.

On November 28, 2011, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 12.***

61.     Elliott served the Writ for Garnishment (Exhibit 12) on the Michigan Department of Treasury and Ms. Beckley.

62.     On or about September 28, 2012, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Beckley Lawsuit, naming the Michigan Department of Treasury as

the garnishee, and represented in pertinent part:

1. On February 9, 2009, the plaintiff received judgment against the defendant for: $1,355.10.
2. The total amount of judgment interest accrued to date is: $612.32.
   The total amount of postjudgment costs accrued to date is: $63.00.
   The total amount of postjudgment payments made and credits to date is: $195.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $ 1705.42.

On November 1, 2012, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 13.***

63.     Elliott served the Writ for Garnishment (Exhibit 13) on the Michigan Department of Treasury and Ms. Beckley.

64.     On or about September 16, 2015, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Beckley Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On February 9, 2009, the plaintiff received judgment against the defendant for: $1,355.10.
2. The total amount of judgment interest accrued to date is: $1,078.51.
   The total amount of postjudgment costs accrued to date is: $.00.
   The total amount of postjudgment payments made and credits to date is: $195.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $ 2,108.61.

On or about November 5, 2015, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 14.***

65.     Elliott served the Writ for Garnishment (Exhibit 14) on the Michigan Department of Treasury and Ms. Beckley.

66.     Elliott and MF received payment in the amount of $514.96 in connection with the Writ for Garnishment (Exhibit 14).

67.     On or about May 16, 2016, Elliott, on behalf of MF, filed a Request and Writ for

Garnishment in the Beckley Lawsuit, naming Bank of America as the garnishee, and represented in pertinent part:

1. Plaintiff received judgment against defendant for $1,355.10 on February 9, 2009.
2. The total amount of judgment interest accrued to date is: $1,176.64.
   The total amount of postjudgment costs accrued to date is: $21.00.
   The total amount of postjudgment payments made and credits to date is: $709.96.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $ 1,842.78.

On or about June 16, 2016, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 15.***

68.     Elliott served the Writ for Garnishment (Exhibit 15) on Bank of America and Ms. Beckley.

69.     Elliott and MF received payment in the amount of $511.37 in connection with the Writ for Garnishment (Exhibit 15).

70.     On or about September 2, 2016, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Beckley Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On February 9, 2009, the plaintiff received judgment against the defendant for $1,355.10.
2. The total amount of judgment interest accrued to date is: $1,219.00.
   The total amount of postjudgment costs accrued to date is: $43.47.
   The total amount of postjudgment payments made and credits to date is: $1,221.33.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $ 1,396.24.

On or about November 23, 2016, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 16.***

71.     Elliott served the Writ for Garnishment (Exhibit 16) on the Michigan Department of Treasury and Ms. Beckley.

72.     As of September 2, 2016, Elliott and Midland stated that Ms. Beckley still owed $1,396.24.

73.     If Elliott and MF had charged Ms. Beckley postjudgment interest at the rates dictated by M.C.L. § 600.6013, Ms. Beckley would owe less than $500 to Midland.

74.     Elliott and MF have added at least $800 of unlawful postjudgment interest to Ms. Beckley's judgment balance.

75.      During the twelve months immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of MF, communicated to Ms. Beckley that she owed postjudgment interest in an amount that exceeded the amount permitted by law.

76.     During the six years immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of MF, communicated to Ms. Beckley that she owed postjudgment interest in an amount that exceeded the amount permitted by law.

77.     During the twelve months immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of MF, communicated to a third party that Ms. Beckley owed postjudgment interest in an amount that exceeded the amount permitted by law.

78.     During the six years immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of MF, communicated to a third party that Ms. Beckley owed postjudgment interest in an amount that exceeded the amount permitted by law.

79.     Elliott and Midland charged Ms. Beckley postjudgment interest at a rate greater than allowed by law.

80.     Elliott and Midland directly or indirectly collected or attempted to collect from Ms. Beckley, money to which they were not entitled in the form of excessive postjudgment interest.

III.     **Plaintiff Ruby Robinson**

81.     Ms. Robinson had a First North American National ("FNAN") account which she used to purchase goods or services for personal, family, and household purposes. Any resulting obligation of Ms. Robinson to pay money was a "debt" as the term is defined and used in the FDCPA, MRCPA, and MOC.

82.     Ms. Robinson's FNAN account went into default. The account was charged off and sold.

83.     Defendant MF purchased Ms. Robinson's account.

84.     Defendant MCM, on behalf of Defendant MF, placed Ms. Robinson's account with Defendant Elliott for collection.

85.     On or about June 22, 2007, Elliott filed a debt collection lawsuit on behalf of MF and against Ms. Robinson in the 61st District Court for the State of Michigan, Case No. 07GC3904 ("Robinson Lawsuit"). The complaint alleged a cause of action under an Account Stated theory. Specifically, the complaint stated, "Plaintiff has completed performance and rendered an account stated; copy attached." Attached to the complaint was an affidavit signed by Renae Kiffmeyer, an employee of MCM. The affidavit was used to assert an Account Stated claim against Ms. Robinson. A copy of the State Court Complaint, and its attachment is attached hereto as ***Exhibit 17.***

86.     On or about September 4, 2007, a default judgment was entered in the Robinson Lawsuit on behalf of MF and against Ms. Robinson in the amount of $11,174.69. Elliott, on behalf of MF, on the Default Request, Affidavit, Entry, and Judgment form that Elliott filed, stated: "The claim is not based on a note or other written evidence of indebtedness."

87.     In addition to Elliott's explicit representation to the court and to Ms. Robinson

that MF's claim was not based on a written instrument, the judgment was rendered only on an account stated theory, and thus was not rendered on a written contract, note, or negotiable instrument. A copy of the Default Judgment entered in the Robinson Lawsuit is attached hereto as ***Exhibit 18***.

88.     On or about September 16, 2011, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Robinson Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On September 4, 2007, the plaintiff received judgment against the defendant for: $11,174.69.
2. The total amount of judgment interest accrued to date is: $5,957.49.
   The total amount of postjudgment costs accrued to date is: $15.00.
   The total amount of postjudgment payments and credits made to date is: $.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $ 17,328.44.

On October 19, 2011, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 19.***

89.     Elliott served the Writ for Garnishment (Exhibit 19) on the Michigan Department of Treasury and Ms. Robinson.

90.     On or about September 28, 2012, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Robinson Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On September 4, 2007, the plaintiff received judgment against the defendant for: $11,174.69.
2. The total amount of judgment interest accrued to date is: $7,489.06.
   The total amount of postjudgment costs accrued to date is: $36.00.
   The total amount of postjudgment payments made and credits to date is: $.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $ 18,881.01.

On November 6, 2012, the state court clerk issued the Writ for Garnishment. A copy of the

Request and Writ for Garnishment is attached hereto as ***Exhibit 20.***

91.     Elliott served the Writ for Garnishment (Exhibit 20) on the Michigan Department of Treasury and Ms. Robinson.

92.     On or about August 18, 2015, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Robinson Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On September 4, 2007, the plaintiff received judgment against the defendant for: $11,174.69.
2. The total amount of judgment interest accrued to date is: $11,766.70.
   The total amount of postjudgment costs accrued to date is: $.00.
   The total amount of postjudgment payments made and credits to date is: $.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $ 22,941.39.

Shortly thereafter, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 21.***

93.     Elliott served the Writ for Garnishment (Exhibit 21) on the Michigan Department of Treasury and Ms. Robinson.

94.     Elliott and MF received payment in the amount of $254.00 in connection with the Writ for Garnishment (Exhibit 21).

95.     On or about July 26, 2016, Elliott, on behalf of MF, filed a Request and Writ for Garnishment in the Robinson Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On September 4, 2007, the plaintiff received judgment against the defendant for: $11,174.69.
2. The total amount of judgment interest accrued to date is: $13,130.14.
   The total amount of postjudgment costs accrued to date is: $21.00.
   The total amount of postjudgment payments made and credits to date is: $254.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $ 24,071.83.

On September 27, 2016, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 22.***

96.     Elliott served the Writ for Garnishment (Exhibit 22) on the Michigan Department of Treasury and Ms. Robinson.

97.     As of July 26, 2016, Elliott and Midland stated that Ms. Robinson still owed $24,071.83.

98.     If Elliott and MF had charged Ms. Robinson postjudgment interest at the rates dictated by M.C.L. § 600.6013, Ms. Robinson would owe less than $14,500 to Midland.

99.     Elliott and MF have added at least $9,500 of unlawful postjudgment interest to Ms. Robinson's judgment balance.

100.    During the twelve months immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of MF, communicated to Ms. Robinson that she owed postjudgment interest in an amount that exceeded the amount permitted by law.

101.    During the six years immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of MF, communicated to Ms. Robinson that she owed postjudgment interest in an amount that exceeded the amount permitted by law.

102.    During the twelve months immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of MF, communicated to a third party that Ms. Robinson owed postjudgment interest in an amount that exceeded the amount permitted by law.

103.    During the six years immediately prior to the filing of this Class Action Complaint, Elliot, on behalf of MF, communicated to a third party that Ms. Robinson owed postjudgment interest in an amount that exceeded the amount permitted by law.

104.    Elliott and Midland charged Ms. Robinson postjudgment interest at a rate greater

than allowed by law.

105.    Elliott and Midland directly or indirectly collected or attempted to collect from Ms. Robinson, money to which they were not entitled in the form of excessive postjudgment interest.

**IV.     Plaintiff Ritchie Swagerty**

106.    Mr. Swagerty had a Citibank account which he used to purchase goods or services for personal, family, and household purposes. Any resulting obligation of Mr. Swagerty to pay money was a "debt" as the term is defined and used in the FDCPA, MRCPA, and MOC.

107.    Mr. Swagerty's Citibank account went into default. The account was charged off and sold.

108.    Defendant LVNV purchased Mr. Swagerty's account.

109.    Defendant LVNV, through its affiliate Resurgent Capital Services L.P., placed Mr. Swagerty's account with Defendant Elliott for collection.

110.    On or about April 28, 2008, Elliott filed a debt collection lawsuit on behalf of LVNV and against Mr. Swagerty in the 62B District Court for the State of Michigan, Case No. 08-5651-GC ("Swagerty Lawsuit"). The complaint alleged a cause of action under an Account Stated theory. Specifically, the complaint stated, "Plaintiff's Assignor has completed performance and rendered an account stated; Affidavit attached." Attached to the complaint was an affidavit signed by Sue Argentieri, an authorized representative of LVNV. The affidavit was used to assert an Account Stated claim against Mr. Swagerty. A copy of the State Court Complaint, and its attachment is attached hereto as **_Exhibit 23._**

111.    On or about July 17, 2008, a default judgment was entered in the Swagerty Lawsuit on behalf of LVNV and against Mr. Swagerty in the amount of $1,583.69. Elliott, on

behalf of LVNV, on the Default Request, Affidavit, Entry, and Judgment form that they filed, stated: "The claim is not based on a note or other written evidence of indebtedness."

112.    In addition to Elliott's explicit representation to the court and to Mr. Swagerty that their claim was not based on a written instrument, the judgment was rendered only on an account stated theory, and thus was not rendered on a written contract, note, or negotiable instrument. A copy of the Default Judgment entered in the Swagerty Lawsuit is attached hereto as ***Exhibit 24***.

113.    On or about October 8, 2011, Defendant Berndt, on behalf of LVNV, filed a Request and Writ for Garnishment in the Swagerty Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On July 17, 2008, the plaintiff received judgment against the defendant for: $1,583.69.
2. The total amount of judgment interest accrued to date is: $153.78.
   The total amount of postjudgment costs accrued to date is: $.00.
   The total amount of postjudgment payments and credits made to date is: $.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $1,737.47.

On October 13, 2011, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 25.***

114.    Berndt served the Writ for Garnishment (Exhibit 25) on the Michigan Department of Treasury and Mr. Swagerty.

115.    On or about October 10, 2012, Berndt, on behalf of LVNV, filed a Request and Writ for Garnishment in the Swagerty Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On July 17, 2008, the plaintiff received judgment against the defendant for: $1,583.69.
2. The total amount of judgment interest accrued to date is $361.35.
   The total amount of postjudgment costs accrued to date is $21.00.

> The total amount of postjudgment payments made and credits to date is $.00.
> The amount of the unsatisfied judgment now due (including interest and costs) is $1,966.04.

On October 17, 2012, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 26.***

116.    Berndt served the Writ for Garnishment (Exhibit 26) on the Michigan Department of Treasury and Mr. Swagerty.

117.    On June 19, 2013, well after Berndt had already begun filing Requests and Writs for Garnishment in the Swagerty Lawsuit, it entered a substitution of attorney with the State Court, replacing Defendant Elliott as the attorney representing Defendant LVNV.

118.    On or about July 19, 2013, Berndt, on behalf of LVNV, filed a Request and Writ for Garnishment in the Swagerty Lawsuit, naming JP Morgan Chase Bank, N.A. as the garnishee, and represented in pertinent part:

1. Plaintiff received judgment against defendant for $1,583.69 on July 17, 2008.
2. The total amount of judgment interest accrued to date is $1,055.13. The total amount of postjudgment costs accrued to date is $.00. The total amount of postjudgment payments made and credits to date is $.00. The amount of the unsatisfied judgment now due (including interest and costs) is $2,638.82.

On July 30, 2013, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 27.***

119.    Berndt served the Writ for Garnishment (Exhibit 27) on JP Morgan Chase Bank, N.A. and Mr. Swagerty.

120.    On or about September 10, 2013, Berndt, on behalf of LVNV, filed a Request and Writ for Garnishment in the Swagerty Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On July 17, 2008, the plaintiff received judgment against defendant for $1,583.69.
2. The total amount of judgment interest accrued to date is $1,085.02.

The total amount of postjudgment costs accrued to date is $21.01.
The total amount of postjudgment payments and credits made to date is $.00.
The amount of the unsatisfied judgment now due (including interest and costs) is $2,689.72.

On September 20, 2013, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 28.***

121.    Berndt served the Writ for Garnishment (Exhibit 28) on the Michigan Department of Treasury and Mr. Swagerty.

122.    On or about November 25, 2013, Berndt, on behalf of LVNV, filed a Request and Writ for Garnishment in the Swagerty Lawsuit, naming JP Morgan Chase Bank, N.A. as the garnishee, and represented in pertinent part:

1. Plaintiff received judgment against defendant for $1,583.69 on July 17, 2008.
2. The total amount of judgment interest accrued to date is $1,127.89. The total amount of postjudgment costs accrued to date is $42.01. The total amount of postjudgment payments made and credits to date is $.00. The amount of the unsatisfied judgment now due (including interest and costs) is $2,753.59.

On or about December 9, 2013, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 29.***

123.    Berndt served the Writ for Garnishment (Exhibit 29) on JP Morgan Chase Bank, N.A. and Mr. Swagerty.

124.    On or about October 16, 2014, Berndt, on behalf of LVNV, filed a Request and Writ for Garnishment in the Swagerty Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On July 17, 2008, the plaintiff received judgment against the defendant for: $1,583.69.
2. The total amount of judgment interest accrued to date is: $1,311.20.
   The total amount of postjudgment costs accrued to date is: $.00.
   The total amount of postjudgment payments made and credits to date is: $.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $ 2,894.89.

On October 22, 2014, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 30.***

125.    Berndt served the Writ for Garnishment (Exhibit 30) on the Michigan Department of Treasury and Mr. Swagerty.

126.    On or about October 12, 2015, Berndt on behalf of LVNV, filed a Request and Writ for Garnishment in the Swagerty Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On July 17, 2008, the plaintiff received judgment against the defendant for: $1,583.69.
2. The total amount of judgment interest accrued to date is: $1,514.83.
   The total amount of postjudgment costs accrued to date is: $.00.
   The total amount of postjudgment payments made and credits to date is: $.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $ 3,098.52.

On October 22, 2015, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 31.***

127.    Berndt served the Writ for Garnishment (Exhibit 31) on the Michigan Department of Treasury and Mr. Swagerty.

128.    On or about October 12, 2016, Berndt on behalf of LVNV, filed a Request and Writ for Garnishment in the Swagerty Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1. On July 17, 2008, the plaintiff received judgment against the defendant for: $1,583.69.
2. The total amount of judgment interest accrued to date is: $1,721.13.
   The total amount of postjudgment costs accrued to date is: $.00.
   The total amount of postjudgment payments made and credits to date is: $.00.
   The amount of the unsatisfied judgment now due (including interest and costs) is: $3,304.82.

On October 24, 2016, the state court clerk issued the Writ for Garnishment. A copy of the

Request and Writ for Garnishment is attached hereto as ***Exhibit 32.***

129.    Berndt served the Writ for Garnishment (Exhibit 32) on the Michigan Department of Treasury and Mr. Swagerty.

130.    As of July 26, 2016, Berndt and LVNV stated that Mr. Swagerty still owed $3,304.82.

131.    If Berndt and LVNV had charged Mr. Swagerty postjudgment interest at the rates dictated by M.C.L. § 600.6013, Mr. Swagerty would owe less than $2,000 to Defendant LVNV.

132.    Berndt and LVNV have added at least $1,300 of unlawful postjudgment interest to Mr. Swagerty's judgment balance.

133.    During the twelve months immediately prior to the filing of this Class Action Complaint, Berndt, on behalf of LVNV, communicated to Mr. Swagerty that he owed postjudgment interest in an amount that exceeded the amount permitted by law.

134.    During the six years immediately prior to the filing of this Class Action Complaint, Berndt, on behalf of LVNV, communicated to Mr. Swagerty that he owed postjudgment interest in an amount that exceeded the amount permitted by law.

135.    During the twelve months immediately prior to the filing of this Class Action Complaint, Berndt, on behalf of LVNV, communicated to a third party that Mr. Swagerty owed postjudgment interest in an amount that exceeded the amount permitted by law.

136.    During the six years immediately prior to the filing of this Class Action Complaint, Berndt, on behalf of LVNV, communicated to a third party that Mr. Swagerty owed postjudgment interest in an amount that exceeded the amount permitted by law.

137.    Berndt and LVNV charged Mr. Swagerty postjudgment interest at a rate greater than allowed by law.

138.    Berndt and LVNV directly or indirectly collected or attempted to collect from Mr. Swagerty, money to which they were not entitled in the form of excessive postjudgment interest.

**V.    Plaintiff Daniel VanderKodde**

139.    Mr. VanderKodde had a credit account with GE Capital which he used to purchase goods or services for personal, family, and household purposes. Any resulting obligation of Mr. VanderKodde to pay money was a "debt" as the term is defined and used in the FDCPA, MRCPA, and MOC.

140.    Mr. VanderKodde's GE Capital account went into default. GE Capital charged off and sold the account to Defendant LVNV on November 28, 2007.

141.    Defendant LVNV, through its affiliate Resurgent Capital Services L.P., placed Mr. VanderKodde's account with Defendant Elliott for collection.

142.    On or about December 28, 2011, Elliott filed a debt collection lawsuit on behalf of LVNV and against Mr. VanderKodde in the 62B District Court for the State of Michigan, Case No. 11-6601-GC ("VanderKodde Lawsuit"). The complaint alleged a cause of action under an Account Stated theory. Specifically, the complaint stated "Plaintiff's assignor has completed performance and rendered an account stated; Affidavit attached." Attached to the complaint was an affidavit signed by Scott Batson, an authorized representative for LVNV. The affidavit was used to assert an Account Stated claim against Mr. VanderKodde. A copy of the State Court Complaint, and its attachment is attached hereto as ***Exhibit 33.***

143.    On or about March 28, 2012, a consent judgment was entered in the VanderKodde Lawsuit on behalf of LVNV and against Mr. VanderKodde in the amount of $4,784.39. The judgment was rendered only on an account stated theory, and thus was not rendered on a written contract, note, or negotiable instrument. A copy of the consent judgment

entered in the VanderKodde Lawsuit is attached hereto as ***Exhibit 34.***

144.    Mr. VanderKodde did not make all of the payments set out in the consent judgment.

145.    On or about July 24, 2013, Elliott, on behalf of LVNV, filed a Request and Writ for Garnishment in the VanderKodde Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1.  On March 28, 2012, the plaintiff received judgment against the defendant for: $4,784.39.
2.  The total amount of judgment interest accrued to date is: $919.28.
    The total amount of postjudgment costs accrued to date is: $15.00.
    The total amount of postjudgment payments made and credits to date is: $.00.
    The amount of the unsatisfied judgment now due (including interest and costs) is: $5,718.67.

On August 22, 2013, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 35.***

146.    Elliott served the Writ for Garnishment (Exhibit 35) on the Michigan Department of Treasury and Mr. VanderKodde.

147.    Elliott and LVNV received payment in the amount of $249.83 in connection with the Writ for Garnishment (Exhibit 35).

148.    On or about October 13, 2014, Elliott, on behalf of LVNV, filed a Request and Writ for Garnishment in the VanderKodde Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1.  On March 28, 2012, the plaintiff received judgment against the defendant for: $4,784.39.
2.  The total amount of judgment interest accrued to date is: $1,658.06.
    The total amount of postjudgment costs accrued to date is: $21.00.
    The total amount of postjudgment payments made and credits to date is: $249.83.
    The amount of the unsatisfied judgment now due (including interest and costs) is: $6,213.62.

On November 18, 2014, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as **_Exhibit 36._**

149.    Elliott served the Writ for Garnishment (Exhibit 36) on the Michigan Department of Treasury and Mr. VanderKodde.

150.    On or about April 23, 2015, Elliott, on behalf of LVNV, moved to set aside the portion of the Consent Judgment requiring Installment Payments, and the prohibition on employment garnishments. The state court granted this motion on May 18, 2015, allowing writs of garnishment to issue.

151.    On or about June 5, 2015, Elliott, on behalf of LVNV, filed a Request and Writ for Garnishment in the VanderKodde Lawsuit, naming Home Repair Services of Kent County as the garnishee, and represented in pertinent part:

1.  Plaintiff received judgment against defendant for $4,784.39 on March 28, 2012.
2.  The total amount of judgment interest accrued to date is $2,047.46. The total amount of postjudgment costs accrued to date is $21.00. The total amount of postjudgment payments made and credits to date is $249.83. The amount of the unsatisfied judgment now due (including interest and costs) is: $6,603.02.

On June 24, 2015, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as **_Exhibit 37._**

152.    Elliott served the Writ for Garnishment (Exhibit 37) on Home Repair Services of Kent County and Mr. VanderKodde.

153.    On or about October 26, 2015, Elliott, on behalf of LVNV, filed a Request and Writ for Garnishment in the state court lawsuit, naming the Michigan Department of Treasury as garnishee, and represented in pertinent part:

1.  On March 28, 2012, the plaintiff received judgment against the defendant for: $4,784.39.
2.  The total amount of judgment interest accrued to date is: $2,274.61.
    The total amount of postjudgment costs accrued to date is: $21.00.

The total amount of postjudgment payments made and credits to date is: $249.83. The amount of the unsatisfied judgment now due (including interest and costs) is: $6,830.17.

On December 15, 2015, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 38.***

154.    Elliott served the Writ for Garnishment (Exhibit 38) on the Michigan Department of Treasury and Mr. VanderKodde.

155.    On or about December 21, 2015, Elliott, on behalf of LVNV, filed a Request and Writ for Garnishment in the state court lawsuit, naming Home Repair Services of Kent County as garnishee, and represented in pertinent part:

1.  Plaintiff received judgment against defendant for $4,784.39 on March 28, 2012.
2.  The total amount of judgment interest accrued to date is $2,370.34. The total amount of postjudgment costs accrued to date is $21.00. The total amount of postjudgment payments made and credits to date is $249.83. The amount of the unsatisfied judgment now due (including interest and costs) is $6,925.90.

On January 6, 2016, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 39.***

156.    Elliott served the Writ for Garnishment (Exhibit 39) on Home Repair Services of Kent County and Mr. VanderKodde.

157.    On or about February 25, 2016, Elliott, on behalf of LVNV, filed a Request and Writ for Garnishment in the VanderKodde Lawsuit, naming PNC Bank NA as the garnishee, and represented in pertinent part:

1.  Plaintiff received judgment against defendant for $4,784.39 on March 28, 2012.
2.  The total amount of judgment interest accrued to date is $2,477.43. The total amount of postjudgment costs accrued to date is $21.00. The total amount of postjudgment payments made and credits to date is $249.83. The amount of the unsatisfied judgment now due (including interest and costs) is $7,032.99.

On March 8, 2016, the state court clerk issued the Writ for Garnishment. A copy of the Request

and Writ for Garnishment is attached hereto as ***Exhibit 40.***

158.   Elliott served the Writ for Garnishment (Exhibit 40) on PNC Bank NA and Mr. VanderKodde.

159.   On or about September 7, 2016, Elliott, on behalf of LVNV, filed a Request and Writ for Garnishment in the VanderKodde Lawsuit, naming the Michigan Department of Treasury as the garnishee, and represented in pertinent part:

1.   On March 28, 2012, the plaintiff received judgment against the defendant for: $4,784.39.
2.   The total amount of judgment interest accrued to date is: $2,784.09.
     The total amount of postjudgment costs accrued to date is: $21.00.
     The total amount of postjudgment payments made and credits to date is: $249.83.
     The amount of the unsatisfied judgment now due (including interest and costs) is: $7,339.65.

On November 11, 2016, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 41.***

160.   Elliott served the Writ for Garnishment (Exhibit 41) on the Michigan Department of Treasury and Mr. VanderKodde.

161.   On or about February 3, 2017, Elliott, on behalf of LVNV, filed a Request and Writ for Garnishment in the VanderKodde Lawsuit, naming PNC Bank, NA as the garnishee, and represented in pertinent part:

1.   Plaintiff received judgment against defendant for $4,784.39 on March 28, 2012.
2.   The total amount of judgment interest accrued to date is: $3,035.58. The total amount of postjudgment costs accrued to date is: $21.00. The total amount of postjudgment payments made and credits to date is: $249.83. The amount of the unsatisfied judgment now due (including interest and costs) is: $7,591.14.

On November 11, 2016, the state court clerk issued the Writ for Garnishment. A copy of the Request and Writ for Garnishment is attached hereto as ***Exhibit 42.***

162.   Elliott served the Writ for Garnishment (Exhibit 42) on PNC Bank, NA and Mr.

VanderKodde.

163.    Elliott and LVNV received payment in connection with the Writ for Garnishment (Exhibit 42).

164.    As of February 3, 2017, Elliott and LVNV stated that Mr. VanderKodde still owed $7,591.14.

165.    If Elliott and LVNV had charged Mr. VanderKodde postjudgment interest at the rates dictated by M.C.L. § 600.6013, Mr. VanderKodde would owe less than $5,000 to Defendant LVNV.

166.    Elliott and LVNV have added at least $2,500 of unlawful postjudgment interest to Mr. VanderKodde's judgment balance.

167.    During the twelve months immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of LVNV, communicated to Mr. VanderKodde that he owed postjudgment interest in an amount that exceeded the amount permitted by law.

168.    During the six years immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of LVNV, communicated to Mr. VanderKodde that he owed postjudgment interest in an amount that exceeded the amount permitted by law.

169.    During the twelve months immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of LVNV, communicated to a third party that Mr. VanderKodde owed postjudgment interest in an amount that exceeded the amount permitted by law.

170.    During the six years immediately prior to the filing of this Class Action Complaint, Elliott, on behalf of LVNV, communicated to a third party that Mr. VanderKodde owed postjudgment interest in an amount that exceeded the amount permitted by law.

171.    Elliott and LVNV charged Mr. VanderKodde postjudgment interest at a rate

greater than allowed by law.

172. Elliott and LVNV directly or indirectly collected or attempted to collect from Mr. VanderKodde, money to which they were not entitled in the form of excessive postjudgment interest.

**VI.    Defendants have violated the FDCPA, MRCPA, and MOC.**

173. The only legal theories of relief asserted in Defendants' lawsuits against Plaintiffs were account stated, open account, and/or unjust enrichment.

174. Defendants' judgments against Plaintiffs were not based on written contracts, promissory notes, or negotiable instruments, that specify an amount of interest.

175. None of the state court judgments entered against Plaintiffs was rendered on a written instrument evidencing indebtedness with a specified interest rate.

176. By calculating postjudgment interest at a rate higher than 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the immediately preceding six months, Defendants have willfully and intentionally collected and attempted to collect amounts that they are not entitled to collect.

177. Defendants have collected and attempted to collect interest amounts that are not owed via letters mailed to thousands of Michigan consumers.

178. Defendants have collected and attempted to collect interest amounts that are not owed via telephone calls placed to thousands of Michigan consumers.

179. Defendants have collected and attempted to collect interest amounts that are not owed, via court proceedings, from thousands of Michigan consumers.

180. Defendants have represented to Plaintiffs, thousands of Michigan consumers, and other third parties, via phone calls, court proceedings, mailings, or other methods of

communication, that Defendants are entitled to collect money they have no right to collect.

181.    The FDCPA provides that it is unlawful for a debt collector to use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e.

182.    The FDCPA provides that it is unlawful for a debt collector to make a false representation of the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

183.    The FDCPA provides that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false. 15 U.S.C. § 1692e(8).

184.    The FDCPA provides that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

185.    The FDCPA provides that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt, including the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

186.    Defendants violated the FDCPA, 15 U.S.C. §§ 1692e and 1692e(2)(A), (8) and (10), and 1692f(1).

187.    Defendants attempted to collect, and did collect, interest amounts that were prohibited by law.

188.    Defendants made inaccurate, misleading, untrue, or deceptive statements about the amount of interest that is owed by debtors in their communications to collect debts.

189.   The MRCPA provides that it is unlawful for a regulated person to make an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt. M.C.L. § 445.252(e).

190.   The MOC provides that it is unlawful for a licensee to make an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt. M.C.L. § 339.915(e).

191.   Defendants misrepresented in communications with debtors that a higher interest rate could be used in calculating the debt owed than the creditor could legally use.

192.   Defendants misrepresented in communications with debtors that a higher amount of interest is owed than could legally be owed.

193.   The MRCPA provides that it is unlawful for a regulated person to misrepresent in a communication with a debtor the legal status of a legal action being taken or threatened or the legal rights of a creditor or debtor. M.C.L. § 445.252(f)(i) and (ii).

194.   The MOC provides that it is unlawful for a regulated person to misrepresent in a communication with a debtor the legal status of a legal action being taken or threatened or the legal rights of a creditor or debtor. M.C.L. § 339.915(f)(i) and (ii).

195.   Defendants violated the MRCPA, M.C.L. § 445.252(e), (f)(i) and (ii).

196.   Defendants violated the MOC, M.C.L. § 339.915(e), (f)(i) and (ii).

197.   Defendants' violations of the FDCPA as alleged herein also constituted violations of the MRCPA and MOC.

198.   Defendants' acts and omissions were done in connection with efforts to collect alleged debts from Plaintiffs and members of the putative classes, and were done intentionally, willfully, and repeatedly on thousands of occasions.

199.    Defendants intentionally and willfully violated the FDCPA, MRCPA, and MOC.

## CLASS ALLEGATIONS

200.    Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiffs bring this action individually and on behalf of a class or classes of similarly situated persons.

201.    Plaintiffs propose four classes:

### 1.    ELLIOTT CLASS

A class comprising: (a) every natural person; (b) against whom a money judgment, in a civil action to collect a debt incurred for personal, family, or household purposes, was entered by a Michigan court; (c) based on a claim for account stated, open account, and/or unjust enrichment, and not to enforce a written instrument or promissory note; (d) from whom Mary Jane M. Elliott, P.C. collected or attempted to collect a judgment balance, by communicating to any person that the judgment debtor owed an amount that included postjudgment interest, calculated at a rate greater than 1% plus the average interest rate paid at auctions of 5-year United States Treasury notes during the immediately preceding six months.

### 2.    BERNDT CLASS

A class comprising: (a) every natural person; (b) against whom a money judgment, in a civil action to collect a debt incurred for personal, family, or household purposes, was entered by a Michigan court; (c) based on a claim for account stated, open account, and/or unjust enrichment, and not to enforce a written instrument or promissory note; (d) from whom Berndt & Associates, P.C. collected or attempted to collect a judgment balance, by communicating to any

person that the judgment debtor owed an amount that included postjudgment interest, calculated at a rate greater than 1% plus the average interest rate paid at auctions of 5-year United States Treasury notes during the immediately preceding six months.

### 3.    MIDLAND SUBCLASS

A subclass comprising: (a) every natural person; (b) against whom a money judgment, in a civil action to collection a debt incurred for personal, family, or household purposes, was entered by a Michigan court in favor of Midland Funding LLC; (c) based on a claim for account stated, open account, and/or unjust enrichment, and not to enforce a written instrument or promissory note; (d) from whom Mary Jane M. Elliott, P.C. or Berndt & Associates, P.C. collected or attempted to collect a judgment balance, by communicating to any person that the judgment debtor owed an amount that included postjudgment interest, calculated at a rate greater than 1% plus the average interest rate paid at auctions of 5-year United States Treasury notes during the immediately preceding six months.

### 4.    LVNV SUBCLASS

A subclass comprising: (a) every natural person; (b) against whom a money judgment, in a civil action to collection a debt incurred for personal, family, or household purposes, was entered by a Michigan court in favor of LVNV Funding LLC; (c) based on a claim for account stated, open account, and/or unjust enrichment, and not to enforce a written instrument or promissory note; (d) from whom Mary Jane M. Elliott, P.C. or Berndt & Associates, P.C. collected or

attempted to collect a judgment balance, by communicating to any person that the judgment debtor owed an amount that included postjudgment interest, calculated at a rate greater than 1% plus the average interest rate paid at auctions of 5-year United States Treasury notes during the immediately preceding six months.

202.    The FDCPA claims of Plaintiffs and the members of each class are subject to a one-year statute of limitation. Accordingly, only those persons to or about whom a communication was made during that period of time beginning one year prior to the date of filing of this complaint and ending on the date the classes are certified, may assert claims under the FDCPA.

203.    The MRCPA and MOC claims of Plaintiffs and the members of each class are subject to a six-year statute of limitation. Accordingly, only those persons to or about whom a communication was made during that period of time beginning six years prior to the date of filing of this complaint and ending on the date the classes are certified, may assert claims under the MRCPA and MOC.

204.    Each class includes more than 100 persons.

205.    The members of each class are so numerous that joinder of all members is impracticable.

206.    There are questions of law and fact common to all members of each class, which common questions predominate over any questions that affect only individual class members. The predominant questions are:

a)       Whether Defendants were entitled to collect or attempt to collect interest on judgments at rates exceeding 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the immediately preceding six months;

b)      Whether postjudgment court forms, telephone calls, and mailed collection notices misrepresented that the class members owed postjudgment interest exceeding 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the immediately preceding six months in connection with judgments;

c)      Whether Defendants used false, deceptive, or misleading representations or means in connection with the collection of any debt, in violation of the FDCPA, 15 U.S.C. §§ 1692e and 1692e(10);

d)      Whether Defendants made false representations regarding the character, amount, or legal status of debts, in violation of the FDCPA, 15 U.S.C. § 1692e(2)(A);

e)      Whether Defendants communicated credit information that Defendants knew or should have known was false, in violation of the FDCPA, 15 U.S.C. § 1692e(8);

f)      Whether Defendants used unfair or unconscionable means to collect or attempt to collect amounts not expressly authorized by the agreement creating the debt or permitted by law, in violation of the FDCPA, 15 U.S.C. § 1692f(1); and

g)      Whether Defendants violated the MRCPA, M.C.L. § 445.252(e), (f)(i) and (ii).

h)      Whether Defendants violated the MOC, M.C.L. § 339.915(e), (f)(i) and (ii).

207.    Plaintiffs' claims are typical of the claims of all class members. Plaintiffs' claims and the claims of all class members are based on the same factual and legal theories. Moreover, Plaintiffs and all class members have suffered the same or similar injury, loss, and damage, which were caused by Defendants' uniform practices of using false, deceptive, misleading, inaccurate, and untrue representations made in the requests and writs for garnishments, collection

calls, and collection letters; as well as Defendants' uniform practices in their attempts to collect and actual collection of unlawful amounts from Plaintiffs and the class members.

208.    Plaintiffs and the class members have each suffered similar injuries as a result of Defendants' unlawful practices, including monetary loss, deprivation of true and accurate information regarding debts purportedly owed by them, and other economic and noneconomic damages.

209.    Plaintiffs will fairly and adequately protect and represent the interests of the members of each class. Plaintiffs have retained counsel experienced in representing consumers in FDCPA litigation, including class actions brought under the FDCPA. Neither Plaintiffs nor counsel have any interests that are adverse or inconsistent with the interests of the members of any class. Neither Plaintiffs nor counsel have any interests that would cause them not to vigorously represent the interests of the members of each class and pursue this action.

210.    Certification of the proposed classes under Fed. R. Civ. P. 23(b)(3) is appropriate in that:

a)      The questions of law or fact common to the members of the classes predominate over any questions affecting only individual members;

b)      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Specifically:

1)      There is no compelling interest in having each class member individually controlling the prosecution of separate actions. Many consumers may not realize that their rights have been violated.

2)      Common relief is sought on behalf of all members of each class. The prosecution of separate actions by individual members of each class would

create a risk of inconsistent or varying adjudications with respect to the individuals members of each class, and a risk that any adjudications with respect to individual members of each class would, as a practical matter, either be dispositive of the interests of other members of each class not party to the adjudication, or substantially impair or impede their ability to protect their interests;

3)      Plaintiffs' counsel has searched PACER and otherwise are unaware of any pending litigation filed on behalf of any putative class member against any defendant concerning this controversy;

4)      It is desirable to concentrate the litigation of the claims in this forum. Defendants regularly transact business in the Western District of Michigan. Defendants file thousands of debt collection lawsuits each year in Michigan courts located in the Western District of Michigan.

5)      The management of the proposed class action will not be unusually difficult. The factual and legal issues raised by this class action complaint will not require extended contact with the members of each class. Defendants' conduct was perpetrated on all members of each class and will be established by common, written proof. Defendants' violations of the law are apparent and can be determined in scope and amount of actual damages, simply by reviewing the state court filings and other documents, which the defendant law firm has in its records.

211.   Class membership is based on objective, readily ascertainable criteria, and it is administratively feasible for the court to determine whether a particular individual is a class member:

1)      Defendants' software contains the interest rate used to calculate alleged amounts due, which are then communicated to class members and third parties in attempts to collect debts;

2)      Defendants' litigation files will contain a copy of every postjudgment collection attempt made in court;

3)      Defendants' account notes, litigation files, and mailing records will contain every communication that was made by Defendants in their attempts to collect a debt;

4)      The State of Michigan certifies the allowable postjudgment interest rate that can be assessed on judgment balances. General Rule: - Interest.pdf, http://courts.mi.gov/Administration/SCAO/Resources/Documents/other/interest.pdf (last visited April 10, 2017). A copy of the allowable interest rates is attached as ***Exhibit 43***;

5)      Defendants' files will contain a ledger for every account, tracking all expenditures and receipts;

6)      State court filings of class members will not contain a written instrument evidencing indebtedness at a specified interest rate; and

7)      State court complaints giving rise to the state court judgments will allege a theory of recovery based on an open account, a stated account, or unjust enrichment.

## CLAIMS FOR RELIEF

### Count 1 – Fair Debt Collection Practices Act

212.   Plaintiffs incorporate the foregoing paragraphs by reference.

213.    Each defendant has violated the FDCPA. Specifically:

    a)    Defendants violated 15 U.S.C. § 1692e; and

    b)    Defendants violated 15 U.S.C. § 1692f.

**Wherefore,** Plaintiffs, individually and on behalf of all others similarly situated, request that the Court certify this action as a class action, and seek judgment against defendants of:

    a)    Actual damages for Plaintiffs and each member of each class pursuant to 15 U.S.C. § 1692k;

    b)    Statutory damages for Plaintiffs and each member of each class pursuant to 15 U.S.C. § 1692k;

    c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

    d)    Such further relief as the court deems just and proper.

### Count 2 – Michigan Collection Practices Act

214.    Plaintiffs incorporate the foregoing paragraphs by reference.

215.    Each defendant has violated the MRCPA. Specifically:

    a)    Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt; and

    b)    Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, and (ii) the legal rights of a creditor or debtor.

**Wherefore,** Plaintiffs, individually, and on behalf of all others similarly situated, request that the Court certify this action as a class action, and seek judgment against defendants for:

    a)    Actual damages, trebled, for Plaintiffs and for each member of each class,

pursuant to M.C.L. § 445.257;

b)      Statutory damages, trebled, for Plaintiffs and for each member of each class, pursuant to M.C.L. § 445.257;

c)      Injunctive relief, for Plaintiffs and for each member of each class, pursuant to M.C.L. § 445.257;

d)      Declaratory relief, for Plaintiffs and for each member of each class, pursuant to M.C.L. § 445.257;

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257; and

f)      Such further relief as the Court deems just and proper.

### Count 3 – Michigan Occupational Code

216.    Plaintiffs incorporate the foregoing paragraphs by reference.

217.    Each defendant has violated the MOC. Specifically:

a)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt; and

b)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, and (ii) the legal rights of a creditor or debtor.

**Wherefore,** Plaintiffs, individually, and on behalf of all others similarly situated, request that the Court certify this action as a class action, and seek judgment against defendants for:

a)      Actual damages, trebled, for Plaintiffs and for each member of each class, pursuant to M.C.L. § 339.916;

b)      Statutory damages, trebled, for Plaintiffs and for each member of each class, pursuant to M.C.L. § 339.916;

c)      Equitable relief, for Plaintiffs and for each member of each class, pursuant to M.C.L. § 339.916;

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916; and

e)      Such further relief as the Court deems just and proper.


Dated: April 10, 2017                              /s/Theodore J. Westbrook (P70834)
                                                   Westbrook Law PLLC
                                                   Attorney for Plaintiffs
                                                   6140 28th Street SE, Suite 115
                                                   Grand Rapids, Michigan 49546-6938
                                                   (616) 288-9548
                                                   twestbrook@westbrook-law.net