**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: February 26, 2020

Mr. Michael J. Cook
Collins, Einhorn, Farrell
4000 Town Center, Ninth Floor
Southfield, MI 48075

Mr. Nabil Gallo Foster
Hinshaw & Culbertson
151 N. Franklin Street, Suite 2500
Chicago, IL 60606

Mr. C. Thomas Ludden
Ms. Karen Ann Smyth
Lipson Neilson, 3910 Telegraph Road, Suite 200
Bloomfield Hills, MI 48302

Mr. Kevin J Rogers
Mr. Phillip C. Rogers
Mr. Theodore James Westbrook
6140 28th Street, S.E., Suite 115
Grand Rapids, MI 49546-6938

Mr. Theodore W. Seitz
Dykema, 201 Townsend Street, Suite 900
Lansing, MI 48933

Re: Case Nos. 19-1091/1127/1128, *Daniel VanderKodde, et al v. Mary Jane Elliott, P.C., et al*
Originating Case No. : 1:17-cv-00203

Dear Counsel,

The court today announced its decision in the above-styled cases.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                  Yours very truly,

                                  Deborah S. Hunt, Clerk

                                  Cathryn Lovely
                                  Deputy Clerk

cc:  Mr. Thomas Dorwin

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0057p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

DANIEL VANDERKODDE; SUSAN BUCK; RUBY ROBINSON; ANITA BECKLEY; RITCHIE SWAGERTY, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants/Cross-Appellees* (19-1091/1127/1128),

*v.*

MARY JANE M. ELLIOTT, P.C. (19-1091/1127); BERNDT & ASSOCIATES, P.C. (19-1091/1128),

*Defendants-Appellees/Cross-Appellants*,

LVNV FUNDING, LLC; MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; ENCORE CAPITAL GROUP, INC.,

*Defendants-Appellees* (19-1091).

Nos. 19-1091/1127/1128

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:17-cv-00203—Paul Lewis Maloney, District Judge.

Argued: January 29, 2020

Decided and Filed: February 26, 2020

Before: GUY, SUTTON, and GRIFFIN, Circuit Judges.

## COUNSEL

**ARGUED:** Theodore J. Westbrook, WESTBROOK LAW PLLC, Grand Rapids, Michigan, for Daniel VanderKodde, Susan Buck, Ruby Robinson, Anita Beckley, and Ritchie Swagerty. Michael J. Cook, COLLINS EINHORN FARRELL PC, Southfield, Michigan for Mary Jane M. Elliott, P.C. C. Thomas Ludden, LIPSON NEILSON P.C., Bloomfield Hills, Michigan, for Berndt & Associates, P.C. Theodore W. Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan, for Midland Funding, LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc. **ON BRIEF:** Theodore J. Westbrook, WESTBROOK LAW PLLC, Grand Rapids,

Michigan, Phillip C. Rogers, Kevin J. Rogers, LAW OFFICE OF PHILLIP C. ROGERS, Grand Rapids, Michigan, for Daniel VanderKodde, Susan Buck, Ruby Robinson, Anita Beckley, and Ritchie Swagerty. Michael J. Cook, COLLINS EINHORN FARRELL PC, Southfield, Michigan for Mary Jane M. Elliott, P.C. C. Thomas Ludden, Karen A. Smyth, LIPSON NEILSON P.C., Bloomfield Hills, Michigan, for Berndt & Associates, P.C. Theodore W. Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan, for Midland Funding, LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc. Nabil G. Foster, HINSHAW & CULBERTSON LLP, Chicago, Illinois, for LVNV Funding, LLC.

GRIFFIN, J., delivered the opinion of the court in which GUY and SUTTON, JJ., joined. SUTTON, J. (pp. 10–16), delivered a separate concurring opinion.

---

**OPINION**

---

GRIFFIN, Circuit Judge.

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Supreme Court made clear that the *Rooker-Feldman* doctrine—which prohibits the lower federal courts from reviewing appeals of state-court decisions—applies only to an exceedingly narrow set of cases. 544 U.S. 280 (2005). This putative class action brought under the Fair Debt Collection Practices Act and Michigan consumer laws "is not the rare one that threads the *Rooker-Feldman* needle." *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 892 (6th Cir. 2020). We therefore reverse its dismissal on *Rooker-Feldman* grounds and remand for further proceedings.

I.

Plaintiffs are consumers who held credit accounts with various financial institutions and later defaulted on their debts. Defendants LVNV Funding, LLC and Midland Funding, LLC bought these debts[1] and hired defendant Mary Jane M. Elliott, P.C., a law firm, to represent them in collection proceedings. In five separate actions, Elliott filed complaints and supporting affidavits in Michigan state court against plaintiffs on LVNV's or Midland Funding's behalf.

---

[1] LVNV bought Swagerty's and VanderKodde's debts; Midland Funding bought Beckley's, Buck's, and Robinson's debts. Defendant Midland Credit Management, Inc. serviced the accounts owned by Midland Funding; both are subsidiaries of defendant Encore Capital Group, Inc.

Each suit resulted in a judgment against the debtor—by default in Buck's, Robinson's, and Swagerty's cases, and by consent in Beckley's and VanderKodde's.

After obtaining a court judgment against a debtor, a "judgment creditor" may resort to garnishment "to intercept the debtor's income at its source (say from the debtor's employer) rather than trying to collect from the debtor herself." *Van Hoven*, 947 F.3d at 891. Michigan's Court Rules "offer a simplified post-judgment garnishment procedure":

> To collect, the creditor gives the court clerk a verified statement that describes the debt and the parties. MCR 3.101(D). If everything "appears to be correct," the clerk issues a writ of garnishment and the creditor serves it on the third party, the garnishee. MCR 3.101(D)–(E). Unless the garnishee or debtor objects, that's usually it: The garnishee gives the money to the creditor rather than the debtor. MCR 3.101(J)(1).

*Id.* Following this roadmap, defendants filed multiple "request[s] and writ[s] for garnishment" in state court for each judgment debtor. At this stage, defendant Berndt & Associates, P.C., a law firm, represented LVNV in plaintiff Swagerty's case, while Elliott remained counsel in the other cases. None of the judgment debtors (i.e., plaintiffs in this case) objected to any of the writs within the fourteen-day window for doing so.

This case concerns the rate of post-judgment interest used in creating the writ-of-garnishment requests. Michigan law provides specific methods for calculating judgment interest. In many cases, including this one, it "is calculated on the entire amount of the money judgment, including attorney fees and other costs," using the following method:

> [I]nterest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section.

MCL § 600.6013(8). Section 600.6013(8) does not distinguish between pre-judgment and post-judgment interest. *See Matich v. Modern Research Corp.*, 420 N.W.2d 67, 75 (Mich. 1988) ("Pre judgment interest vests or becomes fixed at the time the judgment is entered, while post judgment interest continues to accumulate or 'accrue' after the time the judgment is entered."

(emphases omitted)). The Michigan Department of Treasury's website lists every judgment interest rate calculated using this method, dating back to 1987. *Interest Rates for Money Judgments*, https://www.michigan.gov/treasury/0,4679,7-121-44402_44404-107013--,00.html (last visited Feb. 24, 2020). During the eleven-year period at issue here, it reached a peak of 4.033% and a valley of 0.687%. *Id.*

In the writs of garnishment in this case, the outstanding amounts of plaintiffs' debts were calculated using the much higher post-judgment rate of 13%. This is the maximum interest rate allowed for a judgment "rendered on a written instrument evidencing indebtedness with a specified [or variable] interest rate." MCL § 600.6013(7). But the underlying judgments here were not so rendered. The three default judgments specify that they are "not based on a note or other written evidence of indebtedness," and none of the judgments include any supporting written instrument. So, plaintiffs allege, use of the 13% rate was improper under Michigan law.

Plaintiffs claim that defendants' use of this impermissibly high interest rate in the writs of garnishment led to defendants (1) falsely communicating that plaintiffs owed more money than they actually did and (2) collecting (and attempting to collect) more money from plaintiffs than the law allowed. Both of these actions allegedly violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., which "prohibits debt collectors from employing 'false, deceptive, or misleading' practices." *Sheriff v. Gillie*, 136 S. Ct. 1594, 1598 (2016) (quoting 15 U.S.C. § 1692e); *see* §§ 1692e, 1692f. Seeking to represent thousands of Michigan consumers, plaintiffs brought suit in the United States District Court for the Western District of Michigan, alleging violations of the FDCPA; the Michigan Collection Practices Act, MCL § 445.251, et seq.; and the Michigan Occupational Code, MCL § 339.101 et seq.

Elliott and Berndt filed motions to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(1). The district court granted their motions and dismissed the claims for lack of subject-matter jurisdiction. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 314 F. Supp. 3d 836 (W.D. Mich. 2018). Plaintiffs' lawsuit, the district court said, amounted to an appeal of the judgments and writs of garnishment in the state-court collection proceedings, and such appeals are barred under the *Rooker-Feldman* doctrine. Following Elliott and Berndt's

lead, the remaining defendants also filed a motion to dismiss, arguing that *Rooker-Feldman* barred the claims against them, too. The district court granted that motion in a short order, relying on the reasoning in its previous dismissal order, and entered judgment.

Plaintiffs timely appealed. Elliott and Berndt filed cross-appeals raising statute-of-limitations defenses.

II.

"This Court reviews questions of subject matter jurisdiction *de novo*." *Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 435 (6th Cir. 2006).

A.

"The *Rooker-Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012); *see D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The doctrine has a limited scope. It does not, for example, bar "a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 293. It applies only to the "narrow" set of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[2] *Id.* at 284.

We determine whether *Rooker-Feldman* bars a claim by looking to the "source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies. *Id.* "If there is some other source of injury, such as a third party's

[2] *Rooker-Feldman* is often discussed along with the abstention doctrines, like *Younger* and *Pullman*, because they similarly prohibit review of state-court actions by federal courts. But *Rooker-Feldman* is not an abstention doctrine—that is, a "judicially created" exception to federal-court jurisdiction. *See Lindsey v. Normet*, 405 U.S. 56, 62 n.5 (1972). Rather, *Rooker-Feldman* operates as a natural consequence of Congress's decision not to grant subject-matter jurisdiction to the federal district courts or courts of appeals to consider appeals of state-court decisions.

actions, then the plaintiff asserts an independent claim." *Lawrence v. Welch*, 531 F.3d 364, 368–69 (6th Cir. 2008) (quoting *McCormick*, 451 F.3d at 394). "A court cannot determine the source of the injury 'without reference to [the plaintiff's] request for relief.'" *Berry*, 688 F.3d at 299 (alteration in original) (quoting *Evans v. Cordray*, 424 F. App'x 537, 539 (6th Cir. 2011)).

We recently considered the applicability of *Rooker-Feldman* in circumstances quite similar to those here. *Van Hoven*, 947 F.3d at 891. In *Van Hoven*, a judgment debtor brought an FDCPA class action against a law firm that filed requests for writs of garnishment in Michigan state court to collect on her (and others') debts. *Id.* She alleged that those requests unlawfully "tacked on the costs of the request (a $15 filing fee) to the amount due" and "added the costs of prior failed garnishments." *Id.* Faced with the defendants' jurisdictional challenge under *Rooker-Feldman*, we held that the doctrine did not apply for two reasons.

First, *Rooker-Feldman* "applies only when a state court renders a *judgment*—when the court 'investigates, declares, and enforces liabilities' based on application of law to fact." *Id.* at 892 (brackets omitted) (quoting *Feldman*, 460 U.S. at 479). A writ of garnishment is not a judgment—it is the result of a "ministerial process," *id.* at 893, in which the clerk of the court has a nondiscretionary obligation to issue the writ if the request "appears to be correct," MCR 3.101(D). "*Rooker-Feldman* does not apply to 'ministerial' actions by court clerks." *Van Hoven*, 947 F.3d at 893 (quoting *Feldman*, 460 U.S. at 479–80).

Second, the plaintiff's injuries stemmed not from the writs of garnishment themselves, but rather "the costs included in them." *Id.* That is, the plaintiff's allegations "target[ed] Buckles & Buckles' actions in tallying the amount of relief requested, not the writs of garnishment themselves." *Id.* *Van Hoven* also discussed *Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d at 435–37, which concerned an FDCPA action "alleging that a creditor made a false statement to obtain a garnishment order in state court." *Van Hoven*, 947 F.3d at 893. There, we similarly held that *Rooker-Feldman* did not apply because the plaintiff's injuries stemmed from the defendant's conduct, not the state-court judgment, as the plaintiff claimed he "was injured by [the defendant] when [the defendant] filed a false affidavit." *Todd*, 434 F.3d at 437.

B.

Both reasonings from *Van Hoven* apply here. The district court found that plaintiffs' injuries "were caused by the writs of garnishment," and that the writs were "state-court orders subject to *Rooker-Feldman*." *VanderKodde*, 314 F. Supp. 3d at 841. *Van Hoven*'s holding that a writ of garnishment issued by a Michigan court "is not a state court judgment" directly contradicts this conclusion and controls our decision here. 947 F.3d at 893.

But the district court also found that *Rooker-Feldman* applied for a different reason: because "the sources of Plaintiffs' injuries are the underlying judgments, not the writs of garnishment." *VanderKodde*, 314 F. Supp. 3d at 840. The district court stated that the "legal error" at issue—use of the 13% rate of judgment interest that exceeded what Michigan law allows—"occurred in the underlying judgments, not in the request for writs of garnishment." *Id.* Each judgment includes the amount of "judgment interest accrued thus far" and all but one list 13% as the "statutory rate" that amount was "based on." The phrase "judgment interest accrued thus far"—that is, at the time of the judgment's filing—specifically describes pre-judgment interest. *See Matich*, 420 N.W.2d at 75. But MCL § 600.6013(8) makes no distinction between pre-judgment interest and post-judgment interest. Both are calculated in the exact same way. So, continued the district court, the post-judgment interest rate used in calculating the amount owed in the garnishment requests had to be identical to the pre-judgment interest rate that appeared in the underlying judgments. In other words, "the judgment set the rate for both pre and post-judgment interest." *VanderKodde*, 314 F. Supp. 3d at 841.

The problem with the district court's reasoning is its focus on the likely source of defendants' calculation error rather than the source of plaintiffs' injury. In their complaint, plaintiffs allege that defendants "willfully and intentionally collected and attempted to collect amounts that they are not entitled to collect," in violation of the FDCPA, by "calculating postjudgment interest [in the writs of garnishment] at a rate higher than" Michigan law allows. Again, *Van Hoven* controls our decision here, as plaintiffs target defendants' "actions in tallying the amount of relief requested," rather than the state-court judgments themselves. *Van Hoven*,

947 F.3d at 893. That the defendants in *Van Hoven* added costs to the total amount owed instead of using an unlawfully high interest rate does not compel a different result.

The collection proceeding against Swagerty helps to illustrate the disconnect between the state-court judgments and plaintiffs' injuries. That judgment—unlike the judgments in the other cases—listed a pre-judgment interest rate of 4.06%. But Berndt nevertheless calculated the amount owed in the writ-of-garnishment requests it filed using a 13% rate. This shows that inclusion of the unlawfully high amount owed in the writs of garnishment did not flow from the judgments as a natural, inevitable consequence of their existence. Instead, it required independent conduct by defendants. That's the conduct that plaintiffs focus on in their complaint: "tallying the amount of relief requested" in the writ-of-garnishment requests. *Id.*

*Harold v. Steel*, 773 F.3d 884, 885–86 (7th Cir. 2014), which the district court relied on below and defendants rely on now, does not change things. *See VanderKodde*, 314 F. Supp. 3d at 842. We discussed and distinguished that case in *Van Hoven*:

> [In *Harold*, the] claimant alleged that a debt collector had made a false statement in litigation to obtain a default judgment against him. [773 F.3d] at 885. The plaintiff's injury was caused by the state court judgment, not the defendant's actions. That's because the plaintiff had already raised the same objections in state court and lost. *Id.* The resulting state court judgment prompted the plaintiff's wages to be garnished. That made the plaintiff a "state-court loser[ ]" complaining of an injury "caused by [a] state-court judgment[ ]" against him, seeking "review and rejection" of a factual determination the state court had already made. *Exxon*, 544 U.S. at 284. By contrast, Van Hoven never raised her concerns in Michigan state court. Right or wrong, *Harold* does not apply.

*Van Hoven*, 947 F.3d at 893 (last three alterations in original). The same goes here, as plaintiffs did not raise any objections in state court, either. The district court stated that applying *Rooker-Feldman* made "intuitive sense" because "[w]here parties are afforded an opportunity to challenge the amount of money that will be garnished, they should do so," instead of "sit[ting] on their hands" and later suing in federal court. *VanderKodde*, 314 F. Supp. 3d at 844–45. This is a valid concern, but not under *Rooker-Feldman*. Other doctrines, like res judicata, collateral estoppel, and forfeiture can discourage strategic sandbagging in litigation. *Rooker-Feldman*'s focus lies elsewhere.

Because *Rooker-Feldman* does not apply, we reverse the district court's dismissal for lack of subject-matter jurisdiction.

III.

Defendants raise several alternate grounds on which to affirm the district court's dismissal of this case, including standing, "comity," and the statute of limitations (which Elliott and Berndt raise in their cross-appeals). But the district court did not address any of them. Because this is "a court of review, not of first view," *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005), we "remand the case to the district court to resolve [these issues] in the first instance," *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 459 (6th Cir. 2019).

IV.

For the reasons discussed above, we reverse the district court's judgment, dismiss the cross-appeals, and remand for further proceedings consistent with this opinion.

Case: 19-1091 Document: 71-2 Filed: 02/26/2020 Page: 10 (12 of 19)

---

**CONCURRENCE**

---

SUTTON, Circuit Judge, concurring. After Justice Ginsburg's unanimous opinion in *Exxon Mobil v. Saudi Basic Industries*, 544 U.S. 280 (2005), it looked like the Court finally and mercifully had driven a stake through *Rooker-Feldman*. The so-called doctrine had caused so much mischief, creating needless complications, distracting litigants and courts from the properly presented federal issues at hand, and helping no one, not even the supposed beneficiaries of its largesse: state court judgments. One could be forgiven for thinking, as I and others did, that, unless your name was Rooker or Feldman, this supposed limit on the jurisdiction of the federal courts applied to no one, save the occasional innocent who thought he could obtain appellate review of a final state supreme court decision in federal district court, as opposed to the U.S. Supreme Court. *See* Samuel Bray, Rooker-Feldman *(1923–2006)*, 9 Green Bag 2d 317, 317–18 (2006); *In re Smith*, 349 F. App'x 12, 17 (6th Cir. 2009) (Sutton, J., concurring in part and dissenting in part).

But that did not happen. As this case and many others in our circuit confirm, *Rooker-Feldman* is back to its old tricks of interfering with efforts to vindicate federal rights and misleading federal courts into thinking they have no jurisdiction over cases Congress empowered them to decide. In our circuit alone, there have been dozens of post-*Exxon Mobil* cases tangling with the doctrine: by my count, at least 80. *See, e.g.*, *Hake v. Simpson*, 770 F. App'x 733, 736 (6th Cir. 2019); *Berry v. Schmitt*, 688 F.3d 290, 298–302 (6th Cir. 2012); *Edwards v. Thornton*, 413 F. App'x 802, 803–04 (6th Cir. 2011); *Lawrence v. Welch*, 531 F.3d 364, 370–72 (6th Cir. 2008).

We are not alone. *Rooker-Feldman* continues to wreak havoc across the country. *See, e.g.*, *Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 64–66 (1st Cir. 2018); *Sung Cho v. City of New York*, 910 F.3d 639, 644–49 (2d Cir. 2018); *In re Phila. Entm't & Dev. Partners*, 879 F.3d 492, 498–503 (3d Cir. 2018); *Hulsey v. Cisa*, 947 F.3d 246, 249–52 (4th Cir. 2020); *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382–85 (5th Cir. 2013); *Kelley v. Med-1 Sols., LLC*,

548 F.3d 600, 605–07 (7th Cir. 2008); *Dodson v. Univ. of Ark. for Med. Scis.*, 601 F.3d 750, 754–56 (8th Cir. 2010); *Cooper v. Ramos*, 704 F.3d 772, 777–82 (9th Cir. 2012); *Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1173–76 (10th Cir. 2018); *May v. Morgan County*, 878 F.3d 1001, 1004–07 (11th Cir. 2017); *D.C. Healthcare Sys., Inc. v. District of Columbia*, 925 F.3d 481, 485–90 (D.C. Cir. 2019).

Notwithstanding *Exxon Mobil*'s efforts to return *Rooker-Feldman* to its modest roots, lawyers continue to invoke the rule and judges continue to dismiss federal actions under it. Here's to urging the Court to give one last requiem to *Rooker-Feldman*.

The *Rooker* side of things had what seemed to be a humble start in 1923. The Supreme Court dismissed a federal lawsuit seeking to "declare" a state trial court judgment "null and void" after it had already been affirmed by the state's supreme court. *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 414. The brisk, unanimous opinion turned on a section of the Judicial Code, now located at 28 U.S.C. § 1257, that permits only the United States Supreme Court to review appeals from state supreme courts. *Id.* at 416. That was right—not because of comity concerns or any new doctrine that limited the jurisdiction of the federal courts but because only the United States Supreme Court, not federal district courts, may entertain appeals from final judgments of the state courts. 28 U.S.C. § 1257.

Born of a misapprehension about how to appeal a state supreme court decision, *Rooker* was "largely forgotten" until a law professor in 1980 re-conceptualized it into a doctrine that barred federal courts from addressing federal claims that overlapped with state court rulings. Richard H. Fallon, Jr., John F. Manning, Daniel J. Meltzer & David L. Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* 1409 (7th ed. 2015); *see* Williamson B.C. Chang, *Rediscovering the* Rooker *Doctrine: Section 1983, Res Judicata and the Federal Courts*, 31 Hastings L.J. 1337 (1980). Three years later, *Feldman* completed the picture. The Court relied on *Rooker* in dismissing a federal lawsuit as an attempted appeal of a District of Columbia court's bar-admission ruling. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Court's suggestion that federal courts lack jurisdiction over claims "inextricably

Case: 19-1091 Document: 71-2 Filed: 02/26/2020 Page: 12 (14 of 19)

intertwined" with state court "decisions," *id.* at 482 n.16, 486, became a prolific source of controversy, spawning a brood of lower-court heirs.

*Rooker-Feldman* developed into an inscrutable abstention doctrine, an untethered way for federal courts to defer to state court litigation of related cases and controversies and a new way to avoid deciding federal questions. In one scholar's view, it became "the primary docket-clearing workhorse for the federal courts." Susan Bandes, *The* Rooker-Feldman *Doctrine: Evaluating Its Jurisdictional Status*, 74 Notre Dame L. Rev. 1175, 1175 (1999). In the process, it mushroomed well beyond the § 1257 explanation that gave it birth, as the federal courts found one claim after another closely intertwined with claims raised, resolved, sometimes still pending, in the state courts. *See, e.g.*, *Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 199 (2d Cir. 1996) (collecting cases). Scholars criticized the decisions and urged the Supreme Court to reassess. *See* Thomas D. Rowe, Rooker-Feldman: *Worth Only the Powder to Blow it Up?*, 74 Notre Dame L. Rev. 1081, 1084 (1999); Jack M. Beermann, *Comments on* Rooker-Feldman *or Let State Law Be Our Guide*, 74 Notre Dame L. Rev. 1209, 1233 (1999); Barry Friedman & James E. Gaylord, Rooker-Feldman, *From the Ground Up*, 74 Notre Dame L. Rev. 1129, 1133 (1999).

Cue *Exxon Mobil v. Saudi Basic Industries*, 544 U.S. 280 (2005). No mean proceduralist, Justice Ginsburg set the stage this way: "Variously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Id.* at 283. She proceeded to emphasize the "narrow ground" the two decisions occupy. *Id.* at 284. They apply only to litigants who sidestep § 1257 by trying to vacate or reverse final state court decisions in federal district court: namely, only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* The key words are "review" and "judgments." The doctrine does not apply to federal lawsuits presenting similar issues to those decided in a state court case or even to cases that present exactly the same, and thus the most inextricably intertwined, issues. *See id.* at

293. Else, *Rooker-Feldman* would extend "far beyond" its proper scope. *Id.* at 283. As a jurisdictional doctrine focused on state court judgments, it's about one thing and one thing alone: efforts to evade Congress's decision to funnel all appeals from final state court decisions to the United States Supreme Court.

That seemed to be it. One year later, Justice Stevens pronounced that *Exxon Mobil* had "finally interred" the doctrine after it had "produced nothing but mischief for 23 years." *Lance v. Dennis*, 546 U.S. 459, 468 (2006) (Stevens, J., dissenting). One commentator wrote a mock obituary for "Rooker Feldman, the legal personality," "hop[ing] that he leaves no survivors." Samuel Bray, Rooker-Feldman *(1923–2006)*, 9 Green Bag 2d 317, 318 (2006).

But *Rooker-Feldman* harasses litigants and courts to this day. Litigants continue to make expansive *Rooker-Feldman* arguments, even to the Supreme Court itself. *Skinner v. Switzer*, 562 U.S. 521, 531 (2011). And lower courts keep buying them. *See id.* at 529. One empirical analysis suggests the doctrine proliferated *even more* after *Exxon Mobil*'s attempt to limit it. Raphael Graybill, Comment, *The Rook That Would Be King:* Rooker-Feldman *Abstention Analysis After* Saudi Basic, 32 Yale J. on Reg. 591, 591–92 (2015). That conclusion matches my anecdotal experience.

Think of this case and the allegations in it. Plaintiffs allege that the defendants requested state court writs of garnishment with greater post-judgment interest than state law allowed, all in violation of the federal Fair Debt Collection Practices Act. *See* 15 U.S.C. § 1692e. No part of this federal lawsuit could be thought of as an effort to review a final state court judgment in disregard of § 1257. Today's lawsuit does not seek to undo the writs of garnishment. Just the opposite: The plaintiffs *premise* their federal lawsuit on the existence of the writs of garnishment—the final state court decisions. Without those decisions, there is no "false representation" to challenge and no federal lawsuit to bring. 15 U.S.C. § 1692e(2). That *Rooker-Feldman* purports to limit our jurisdiction makes matters worse. Once raised, jurisdictional defenses must be addressed. Once addressed, *Rooker-Feldman*'s many descendants and accordion-like verbal formulations must be confronted, sometimes spiked by federal judicial instincts to do less rather than more and to defer to state courts in the process.

Case: 19-1091 Document: 71-2 Filed: 02/26/2020 Page: 14 (16 of 19)

While I have no objection to those instincts, *Rooker-Feldman* is not the way to channel them. Better, it seems to me, to recall the roots of *Rooker-Feldman* and its status as a jurisdictional defense, both of which offer a way to cabin it.

*Rooker* started as an implication. In saying that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court," § 1257 implies that state court losers may not appeal those judgments to federal district courts. Just one federal statute to my knowledge empowers district courts to review final state court judgments, 28 U.S.C. § 2254(a), which allows federal habeas review of state prisoners' petitions for relief. Even that statute allows just collateral review, as opposed to direct review, of state court final judgments. That no other federal statute permits federal district courts to directly review state court judgments cements § 1257's implication that the U.S. Supreme Court normally is the exclusive route to appeal final state court judgments.

The Court's recent efforts to tighten the screws on the meaning of subject matter jurisdiction point in the same direction. *See, e.g.*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006); *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 813 (6th Cir. 2015). How strange to treat *Rooker-Feldman* as a jurisdictional defense and yet to extend it beyond its jurisdictional roots in § 1257. All that's at issue is the meaning of a jurisdictional provision—a matter of statutory interpretation, not a free-flowing exercise in identifying new explanations for diminishing federal jurisdiction. The same could be said of the Court's efforts to root other doctrines more rigorously in statutory text. *See, e.g.*, *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 (2014); *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001).

The text of the statute demands an appellate and judgment-centered approach, which asks, as *Exxon Mobil* asked, whether the claimant seeks to "review" final state court "judgments." 544 U.S. at 284, 292–94. And that's all *Rooker* did in response to the plaintiff's request to a federal district court to "declare[] null and void" a state court judgment, reminding litigants that only the Supreme Court "could entertain a proceeding to reverse or modify [a state court] judgment." 263 U.S. at 414, 416.

Any broader approach—using the rule to call into question federal court efforts to undermine or sidestep or second guess state court rulings—pulls into its vortex the many things the rule does not do. Above everything else, the rule is not a substitute for claim or issue preclusion. In our legal system of overlapping state and federal jurisdiction, dueling resolutions of claims and issues are a national litigation reality. *See Growe v. Emison*, 507 U.S. 25, 32 (1993). There's no way around it in our federalist system. But Congress and the courts already have developed a full arsenal of tools to deal with these problems. Federal courts must give full faith and credit to state court judgments. 28 U.S.C. § 1738. That means state court judgments have the same preclusive effect in federal court that they would have within the State. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Long-standing preclusion doctrines thus offer plenty of tools—and non-jurisdictional tools at that—to rebuff creative attempts to re-litigate state court decisions and judgments in federal court. *See Exxon Mobil*, 544 U.S. at 293. It is hard to see a situation where *Rooker-Feldman* could add anything meaningful to these rules. Fallon, Jr., et al., *supra*, at 1409–10; *see also* Friedman & Gaylord, *supra*, at 1131–33.

Remember one thing more. The state courts have not had problems dealing with overlapping state and federal court decisions from the other direction. Claim and issue preclusion principles have worked just fine in deciding how to deal with a pending or final federal court action with overlapping issues. To my knowledge, there is no *Rooker-Feldman* equivalent in the fifty state high courts. We might learn a thing or two from them.

Why does this continue to happen? Why do good lawyers and judges continue to invoke *Rooker-Feldman* in the federal courts? Two possibilities come to mind.

One is a clause in the Court's recent opinion. While *Exxon Mobil* tamped fights over the meaning of "inextricably intertwined" state and federal court cases, it potentially left room for debate over the meaning of federal causes of action "complaining of injuries caused by state-court judgments." 544 U.S. at 284. The clause could refer to a state court judgment that injures someone because they lost (and they wish to appeal it). Or it could refer, as some have argued, to a state court judgment that injures someone because of a ruling in the decision (and they wish to avoid it by relitigating the point in another forum or by using the ruling as a springboard, as

here, for a federal cause of action). The former possibility is consistent with the rest of the sentence of which it is a part—that the rule applies only to "review" of state court "judgments." *Id.* at 284. The latter possibility transforms the rule into a difficult-to-pin down inquiry that invariably overlaps with claim and issue preclusion, and ultimately contradicts the top-line imperative of *Exxon Mobil*: to use preclusion principles rather than a spongy jurisdictional doctrine to deal with issues arising in overlapping state and federal cases.

A second possibility is a naming problem. Each step away from the statute that justifies the rule creates exponential risks of expansion and confusion. The rule started innocently as one case name, a single step removed from the statute. Then it became another case name. Then it became a doctrine. Before long, it took on a life of its own as language from the two decisions, read creatively by lawyers and judges and academics conceptualizing the doctrine, created new justifications for the rule and new areas for the rule to colonize. Perhaps it's worth going back to the first link in this chain. The rule stems from a statute and could be named accordingly: say "the 1257 Rule" or "the Supreme Court review rule." If you doubt me, compare the fortunes of the "final judgment rule" and the "*Rooker-Feldman* doctrine."

Whatever the source of the problem, the remedy in the lower courts is straightforward. Absent a claim seeking review of a final state court judgment, a federal court tempted to dismiss a case under *Rooker-Feldman* should do one thing: Stop. If the temptation lingers, the court should try something else: Reconsider. And if that does not work, the court should exercise jurisdiction anyway and ask the U.S. Supreme Court to reverse it. The Court, I suspect, never will, and that's all we lower court judges should need to know.

Case: 19-1091 Document: 71-3 Filed: 02/26/2020 Page: 1 (19 of 19)

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 19-1091/1127/1128

**FILED**
Feb 26, 2020
DEBORAH S. HUNT, Clerk

DANIEL VANDERKODDE; SUSAN BUCK; RUBY ROBINSON; ANITA BECKLEY; RITCHIE SWAGERTY, on behalf of themselves and all others similarly situated,

Plaintiffs - Appellants/Cross - Appellees (19-1091/1127/1128),

v.

MARY JANE M. ELLIOTT, P.C. (19-1091/1127); BERNDT & ASSOCIATES, P.C. (19-1091/1128),

Defendants - Appellees/Cross - Appellants,

LVNV FUNDING, LLC; MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; ENCORE CAPITAL GROUP, INC.,

Defendants - Appellees (19-1091).

Before: GUY, SUTTON, and GRIFFIN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is REVERSED, the cross-appeals are DISMISSED, and the case is REMANDED to the district court for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk