# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SUSAN BUCK, ANITA BECKLEY,
RUBY ROBINSON, RITCHIE SWAGERTY,
and DANIEL VANDERKODDE,
on behalf of themselves and
all others similarly situated,

     Plaintiffs,                          Case No. 1:17-cv-203

v.                                      HON. PAUL L. MALONEY

MARY JANE M. ELLIOTT, P.C.,
BERNDT & ASSOCIATES, P.C.,
MIDLAND FUNDING LLC,
MIDLAND CREDIT MANAGEMENT, INC.,
ENCORE CAPITAL GROUP, INC., and
LVNV FUNDING LLC,

     Defendants.

_____/

## BRIEF IN OPPOSITION TO MARY JANE M. ELLIOTT, P.C.'S MOTION FOR JUDGMENT ON FDCPA CLAIMS AND TO DISMISS STATE-LAW CLAIMS

## *ORAL ARGUMENT REQUESTED*

# TABLE OF CONTENTS

TABLE OF CONTENTS .........................................................................I

TABLE OF AUTHORITIES ................................................................ III

INTRODUCTION ................................................................................. 1

ARGUMENT ......................................................................................... 5

I.   LEGAL STANDARD. ...................................................................... 5

II.  THE STATUTE OF LIMITATIONS DOES NOT BAR FDCPA CLAIMS WHERE
DISCRETE VIOLATIONS OCCURRED DURING THE ONE YEAR PRECEDING THE
FILING OF THE COMPLAINT. ............................................................. 6

   A.  The 13% Post-Judgment Interest Rate Charged by MJE in the
   Garnishments Was Not Established by the Collection Judgments. .................. 6

      1.   The Source of Plaintiffs' Injuries are MJE's Post-Judgment
      Communications and Actions, Not the Collection Judgments ....................... 7

      2.   The Collection Judgments Could Not Establish the Lawful Rate of
      Judgment Interest under Collateral Estoppel Principles. ............................. 9

   B.  MJE Committed Distinct Violations of the FDCPA During the Twelve
   Months Prior to the Filing of Plaintiffs' First Amended Complaint ............... 11

III.   PLAINTIFFS' CLAIM UNDER THE MRCPA DOES NOT RAISE A NOVEL OR
COMPLEX ISSUE OF STATE LAW. ....................................................... 15

   A.  The Only Relevant State-Law Question Is a Straightforward Application
   of the MRCPA to Defendants' Practice of Systematically Overcharging
   Plaintiffs and the Class .................................................................... 15

   B.  The Unavoidable Issue of Whether Defendants Charged Excessive Interest
   under Michigan's Post-Judgment Interest Statute Also Lacks Novelty or
   Complexity ................................................................................... 20

IV.   THERE ARE NO EXCEPTIONAL CIRCUMSTANCES OR COMPELLING REASONS
FOR DECLINING JURISDICTION. .......................................................... 22

A.   The Michigan Court Rules Would Not Bar Plaintiffs from Pursuing Their MRCPA Claim as a Class Action in State Court. ............................................ 23

B.   Even If Plaintiffs Could Not Bring a Class Action under the MRCPA in State Court, This Court Could Maintain Jurisdiction and Certify a Class Action under Federal Rule of Civil Procedure 23. ....................................................... 24

C.   Jury Confusion Is Not a Significant Concern where the FDCPA and MRCPA Provisions at Issue Are Effectively Identical. .................................... 26

V.   MAINTAINING SUPPLEMENTAL JURISDICTION BEST SERVES JUDICIAL ECONOMY, FAIRNESS, AND CONVENIENCE AND CONSERVES PARTY AND JUDICIAL RESOURCES. ...................................................................................................... 27

CONCLUSION .................................................................................... 28

# TABLE OF AUTHORITIES

## CASES

*Barany-Snyder v. Weiner*
  539 F.3d 327 (6th Cir. 2008) ................................................................. 5

*Blakely v. United States*
  276 F.3d 853 (6th Cir. 2002) ............................................................... 27

*Buck v. Thomas M. Cooley Law School*
  597 F.3d 812 (6th Cir. 2010) ................................................................. 9

*Califano v. Yamasaki*
  442 U.S. 682 (1979) ............................................................................ 25

*Campanella v. Commerce Exch. Bank*,
  137 F.3d 885 (6th Cir. 1998) ................................................................. 6

*Carpenter v. Monroe Fin. Recovery Grp., LLC*
  119 F. Supp. 3d 623 (E.D. Mich. 2015) ............................................... 18

*City of Chi. v. Int'l College of Surgeons*
  522 U.S. 156 (1997) ........................................................................ 6, 27

*Cogan v. Cogan*
  149 Mich. App. 375 (1986) ................................................................. 10

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*
  508 F.3d 327 (6th Cir. 2007) ................................................................. 5

*Currier v. PDL Recovery Group, LLC*
  2017 WL 712887 (E.D. Mich. Feb. 23, 2017) ..................................... 17

*Dahl v. First Franklin Loan Servs.*
  2014 WL 6686769 (E.D. Mich. Nov. 26, 2014) .................................. 17

*Dana v. Am. Youth Found.*
  257 Mich. App. 208 (2003) ................................................................. 17

*Dubridge v. Ocwen Loan Servicing*
  2014 WL 1878770 (W.D. Mich. May 12, 2014) .................................. 19

*Fisher Sand & Gravel v. Sweebe*
    494 Mich. 543 (2013) ........................................................................ 20

*Gamby v. Equifax Info. Servs., LLC*
    462 F. App'x 552 (6th Cir. 2012) ........................................ 16, 17, 26

*Glover v. Nationwide Mut. Fire Ins. Co.*
    676 F. Supp. 2d 602 (W.D. Mich. 2009) ........................................ 27

*Gradisher v. Check Enforcement Unit, Inc.*
    133 F. Supp. 2d 988 (W.D. Mich. 2011) ........................................ 18

*Hanna v. Plumer*
    380 U.S. 460 (1965) ........................................................................ 25

*Hucul Adver., LLC v. Charter Twp. Of Gaines*
    748 F.3d 273 (6th Cir. 2014) .......................................................... 6

*In re: FDCPA Cognate Cases*
    2016 WL 1273349 (W.D. Mich. May 15, 2018) ............................ 13

*Kaplan v. Assetcare, Inc.*
    88 F. Supp. 2d 1355 (S.D. Fla. 2000) ............................................ 12

*Lichon v. Am. Universal Ins. Co.*
    436 Mich. 408 (1990) ...................................................................... 10

*Litt v. Midland Credit Mgmt.*
    2014 WL 1977137 (E.D. Mich. May 13, 2014) ............................ 28

*Mann v. Acclaim Fin. Servs., Inc.*
    232 F.R.D. 278 (S.D. Ohio 2003) .................................................. 28

*Martin v. Trott Law, P.C.*
    198 F. Supp. 3d 794 (E.D. Mich. 2016) ........................................ 18

*McCorriston v. L.W.T., Inc.*
    536 F. Supp. 2d 1268 (M.D. Fla. 2008) ........................................ 12

*McKeown v. Mary Jane M. Elliott P.C.*
    2007 WL 4326825 (E.D. Mich. Dec. 10, 2007) ............................ 18

*Mielke v. Bank of Am. Home Loans*
  2011 WL 1464848 (E.D. Mich. Apr. 18, 2011) ........................................... 17, 26

*Mine Workers v. Gibbs*
  383 U.S. 715 (1966) ............................................................................................ 6

*Misleh v. Timothy E. Baxter & Assocs.*
  786 F. Supp. 2d 1330 (E.D. Mich. 2011) .......................................................... 18

*Newman v. Trott & Trott P.C.*
  889 F. Supp. 2d 948 (E.D. Mich. 2012) ....................................................... 18, 19

*Pittman v. J.J. MacIntyre Co.*
  969 F. Supp. 609 (D. Nev. 1997) ...................................................................... 12

*Purnell v. Arrow Fin. Servs., LLC*
  303 F. App'x. 297 (6th Cir. 2008) ................................................................. 12, 14

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*
  559 U.S. 393 (2010) ..................................................................................... 24, 25

*Slorp v. Lerner, Sampson & Rothfuss*
  587 F. App'x. 249 (6th Cir. 2014) ..................................................................... 14

*Smith v. Lerner, Sampson, & Rothfuss*
  658 F. App'x. 268 (6th Cir. 2016) ..................................................................... 14

*Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrev. Trust Dated June 27, 2002*
  410 F.3d 304 (6th Cir. 2005) ......................................................................... 10, 11

*Stolicker v. Muller, Muller, Richmond, Harms, Myers, and Sgroi, P.C.*
  2005 WL 2180481 (W.D. Mich. Sept. 9, 2005) ................................................. 19

*Stratton v. Portfolio Recovery Assocs., LLC*
  770 F.3d 443 (6th Cir. 2014) ............................................................................ 17

*Thompke v. Fabrizio & Brook, P.C.*
  261 F. Supp. 3d 798 (E.D. Mich. 2017) ............................................................ 17

*United States v. Dominguez*
    359 F.3d 839 (6th Cir.), *cert. denied*, 543 U.S. 848 (2004) ................................ 10

*VanderKodde v. Mary Jane M. Elliott, P.C.*
    951 F.3d 397 (6th Cir. 2020) .................................................... 2, 8, 16, 20

*VanDeventer v. Mich. Nat'l Bank*
    172 Mich. App. 456 (1988) ................................................................. 10

*Walker v. Shermeta, Adams, Von Allmen, PC*
    623 F. App'x 764 (6th Cir. 2015) ...................................................... 17

*Ward v. G. Reynolds Sims & Assocs.*
    2013 WL 360312 (E.D. Mich. Jan. 30, 2013) .................................... 18

*Williams v. Logan*
    184 Mich. App. 472 (1990) ................................................................. 10

*Wilson v. Trott Law, P.C.*
    118 F. Supp. 3d 953 (E.D. Mich. 2015) ............................................ 18

*Wyandotte Elec. Supply Co. v. Elec. Tech. Sys., Inc.*
    499 Mich. 127 (2016) .......................................................... 20, 21, 22

## STATUTES

15 U.S.C. § 1692e ............................................................... passim

15 U.S.C. §1692f ...................................................... 4, 14, 15, 17

28 U.S.C. § 1367 ............................................................... passim

M.C.L. § 339.901 ................................................................. 19

M.C.L. § 445.251 ................................................................. 18

M.C.L. § 445.252 .................................................... 4, 16, 17, 26

M.C.L. § 445.257 .................................................... 23, 26

vi

M.C.L. § 600.6013 ...........................................................................................passim

**RULES**

Fed. R. Civ. P. 1 ................................................................................. 25

Fed. R. Civ. P. 12 ................................................................................. 5

Fed. R. Civ. P. 23 ........................................................................ 22, 24

M.C.R. 2.603 ...................................................................................... 11

M.C.R. 3.501 ...................................................................................... 23

## INTRODUCTION

Defendant Mary Jane M. Elliott, P.C. ("MJE") has now filed its third motion to dismiss. Its primary contention, that the one-year limitations period under the Fair Debt Collection Practices Act ("FDCPA") has expired, is based on a hidden false premise: that issue preclusion applies to the interest rate MJE placed in its requests for default judgments against Plaintiffs. Necessary elements for issue preclusion, including that the parties are identical and that the issue being litigated was actually litigated in the prior proceeding, do not exist here. No matter how the collection judgments are interpreted, they did not establish MJE's right to later collect unlawful interest.

MJE also fails to acknowledge the Sixth Circuit's finding, little more than two months ago, that Plaintiffs' FDCPA claims **do not relate to MJE's conduct in seeking the collection judgments**. Plaintiffs challenge MJE's independent, later conduct in communicating excessive interest amounts in Request and Writ for Garnishment forms generated by MJE after entry of judgment and within one year prior to the filing of the First Amended Complaint. Each time MJE prepared and sent a garnishment request that calculated an excessive amount of interest, MJE's communication of and attempt to collect a new and increased unlawful interest amount was a new violation of the FDCPA. Each of MJE's post-judgment violations "required independent conduct by defendants," was discrete, and accrued at the time

of the violation, not some earlier time. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 403-04 (6th Cir. 2020).

Plaintiffs' FDCPA claims are not barred by the statute of limitations and there is no independent reason to decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims. Those claims, under Michigan's Regulation of Collection Practices Act ("MRCPA"), arise from the same conduct establishing Plaintiffs' federal claim: MJE's actual and attempted collection of post-judgment interest from Plaintiffs at a rate far exceeding the limit provided by Michigan law. There is no novel or complex issue of state law that can be avoided through declining supplemental jurisdiction, no efficiency to be gained thereby, and no confusion to be avoided. Both the FDCPA and MRCPA prohibit false or misleading representations in connection with collection of debts, and there is no serious question that MJE is a "regulated person" under the MRCPA. Even if this case were otherwise "exceptional" under 28 U.S.C. § 1367(c)(4), it would be inefficient and wasteful of party and judicial resources to decline to exercise supplemental jurisdiction, because Plaintiffs would simply bring the same MRCPA claim in a state-court class action. MJE's third motion to dismiss should be denied.

## BACKGROUND FACTS

MJE filed at least one lawsuit against each Plaintiff to collect a delinquent consumer debt. (First Am. Compl., ECF No. 5, PageID.16-17, 22-23, 27, 31-32, 37.) The collection complaints did not specify any amount or rate for judgment interest. (*Id.*) MJE obtained judgments in those lawsuits either by default (Buck, ECF No. 5-2; Robinson, ECF No. 5-18; Swagerty, ECF No. 5-24) or consent (Beckley, ECF No. 5-11; VanderKodde, ECF No. 5-34). A 13% prejudgment interest rate was presented by MJE for the first time in the judgments themselves. (*See*, e.g., ECF No. 5-2, PageID.62; ECF No. 5-11, PageID.83.) The state district courts presiding over the collection actions never considered the interest rate presented by MJE.

After entry of the judgments, MJE sought to collect amounts owing by garnishment and other means. MJE engaged in a pattern of adding post-judgment interest to the claimed amounts due under the judgments in amounts clearly exceeding the statutory maximum provided by M.C.L. § 600.6013(8), and accordingly: (1) communicated false debt information to Plaintiffs and others, and (2) collected excessive amounts from Plaintiffs. (*See* ECF No. 5, PageID.21, 26, 30, 36, 42.)

On April 10, 2017, Plaintiffs filed their First Amended Complaint, which detailed the foregoing allegations and sought recovery on a class-wide basis under the FDCPA and MRCPA. (*Id.* at PageID.43-46, 52-54.) In other words, the First

Amended Complaint alleges that by adding and collecting post-judgment interest exceeding that specified in M.C.L. § 600.6013(8), MJE violated both the FDCPA, 15 U.S.C. §§ 1692e and 1692f, and MRCPA, M.C.L. § 445.252(e) and (f). (*Id.*)

Each time it sent a new garnishment request to the state courts, MJE communicated a new debt amount, tallying additional interest at the unlawfully high rate. (*See, e.g.*, ECF No. 5-3, PageID.64; ECF No. 5-4, PageID.66; ECF No. 5-5, PageID.68; ECF No. 506, PageID.70; ECF No. 5-7, PageID.71; ECF No. 5-8, PageID.74; ECF No. 5-9, PageID.76.)[1] The First Amended Complaint attaches examples of garnishment requests regarding debts of each Plaintiff that were created and sent by MJE within one year prior to the filing of the First Amended Complaint. (ECF No. 5-9, PageID.76, dated September 9, 2016; ECF No. 5-16, PageID.93, dated September 2, 2016; ECF No. 5-22, PageID.107, dated July 26, 2016; ECF No. 5-32, PageID.129, dated October 12, 2016; ECF No. 5-41, Pa geID.140, dated September 7, 2016; ECF No. 5-42, PageID.151, dated February 3, 2017.) Each of these garnishment requests reflected a new and greater interest amount. (*Compare id. to* ECF No. 5-2, PageID.62; ECF No. 5-11, PageID.83; ECF No. 5-18, PageID.99; ECF No. 5-24, PageID.113; ECF No. 5-34, PageID.135.)

---

[1] Notably, the garnishment requests themselves do not state any interest rate. (*Id*.) They simply provide a number representing the total judgment interest included in the amount MJE seeks to garnish and add that number into the "amount of the unsatisfied judgment now due." (*Id*.) Plaintiffs have alleged, and MJE has admitted, that MJE calculated the judgment interest amounts using a 13% rate.

Plaintiffs allege in this case that each time MJE communicated and attempted collection of these new, greater, and excessive interest amounts, MJE violated the FDCPA and MRCPA. (ECF No. 5, PageID. 21-22, 26, 30, 36, 42-44.)

## ARGUMENT

### I.   LEGAL STANDARD.

On a motion under Rule 12(c), the court construes the complaint "in the light most favorable to the nonmoving party, accept[s] the well-pled factual allegations as true, and determine[s] whether the moving party is entitled to judgment as a matter of law." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quotation marks omitted) (quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).  To withstand a Rule 12(c) motion, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.* (quoting *Commercial Money Ctr.*, 508 F.3d at 336).

In any civil action in which the district courts have original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within which such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. That standard is met where "the state and federal claims 'derive from a common nucleus of operative fact.'" *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *Mine Workers v. Gibbs*, 383

5

U.S. 715, 725 (1966)). Thus, "if there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998).

Where federal and state claims derive from a common nucleus of operative fact, the district court may decline to exercise supplemental jurisdiction only in four enumerated circumstances: (1) "the [state-law] claim raises a novel or complex issue of State law," (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) "the district court has dismissed all claims over which it has original jurisdiction," or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c); *see also Hucul Adver., LLC v. Charter Twp. Of Gaines*, 748 F.3d 273, 280-81 (6th Cir. 2014) ("in the absence of any such circumstance, it does not appear that a court would be authorized—let alone required—to decline to exercise jurisdiction.")

## II.   THE STATUTE OF LIMITATIONS DOES NOT BAR FDCPA CLAIMS WHERE DISCRETE VIOLATIONS OCCURRED DURING THE ONE YEAR PRECEDING THE FILING OF THE COMPLAINT.

### A. The 13% Post-Judgment Interest Rate Charged by MJE in the Garnishments Was Not Established by the Collection Judgments.

In service of its purported statute of limitations argument, MJE incorporates bits and pieces of the doctrine of collateral estoppel without ever acknowledging the

elements of that doctrine. MJE wants the collection judgments—and MJE's reference within the judgments to a 13% interest rate—to establish the lawful rate of interest and immunize MJE from all its later attempts to collect snowballing excessive interest. There are several problems with this framework, including that it ignores the law of the case regarding the source of Plaintiff's injuries—the injuries alleged stemmed from post-judgment collection communications that violated federal law, not the judgments—and that the issue of the appropriate interest rate was never actually litigated in the collection actions and could not have been established under collateral estoppel principles.

### 1. The Source of Plaintiffs' Injuries are MJE's Post-Judgment Communications and Actions, Not the Collection Judgments.

MJE's statute of limitations argument proceeds along a familiar line, positing that the "real" sources of Plaintiffs' injuries are the collection judgments and not the subsequent, repeated, and unlawful collection efforts Plaintiffs identified in the First Amended Complaint. This argument has already been rejected by the Sixth Circuit, which held that the "likely source of defendants' calculation error," i.e., MJE's use of wrong interest rates in collection judgments, did not determine the "source of plaintiffs' injury," i.e., Defendants' post-judgment collection communications that included excessive amounts. *VanderKodde*, 951 F.3d at 403 (ECF No. 134, PageID.2192). It is Defendants' "actions in tallying the amount of relief requested"

in Request and Writ for Garnishment forms, and communicating those inflated amounts, that Plaintiffs challenge here. *Id.* at 403.

Puzzlingly, MJE proceeds with the argument that its misconduct stems only from the judgments despite obvious indications that the Sixth Circuit rejects this characterization:

> The collection proceeding against Swagerty helps to illustrate the disconnect between the state-court judgments and plaintiffs' injuries. That judgment—unlike the judgments in the other cases—listed a pre-judgment interest rate of 4.06%. But Berndt nevertheless calculated the amount owed in the writ-of-garnishment requests it filed using a 13% rate. This shows that **inclusion of the unlawfully high amount owed in the writs of garnishment did not flow from the judgments as a natural, inevitable consequence of their existence. Instead, it required independent conduct by defendants**. That's the conduct plaintiffs focus on in their complaint: "tallying the amount of relief requested" in the writ-of-garnishment requests.

*Id.* at 403-04 (emphasis added).

For statute of limitations purposes, it does not matter why MJE attempted to collect excessive interest from Plaintiffs through garnishments and collection letters. It only matters when they did so. Here, it is undisputed that MJE created and sent Request and Writ for Garnishment forms, including judgment interest calculated at

an unlawful 13% rate, to four of the five Plaintiffs within the one (1) year prior to the filing of the First Amended Complaint.[2]

### 2. The Collection Judgments Could Not Establish the Lawful Rate of Judgment Interest under Collateral Estoppel Principles.

MJE presented the 13% interest rate for the first time in the judgments it submitted in the collection actions. While Plaintiffs and MJE disagree as to whether those judgments refer to post-judgment interest at all—they do not—it is indisputable that the judgment interest rate was never litigated in the collection actions. The issue of the correct interest rate was not resolved in MJE's favor in the collection actions and did not pave the way for MJE to continue to demand and collect excessive interest forever thereafter.

Federal courts give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state. *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816-17 (6th Cir. 2010) (citing *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007)). Under Michigan law, issue preclusion applies to bar relitigation of an issue in a subsequent action only where all of the following are true: (1) the parties in both proceedings are the same or in privity; (2) there was a valid, final judgment

---

[2] Within the one (1) year prior to the filing of the First Amended Complaint, MJE created and sent such garnishments with respect to each Plaintiff other than Ritchie Swagerty. Defendant Berndt & Associates, P.C. had replaced MJE as counsel for Defendant LVNV Funding LLC in its collection action against Mr. Swagerty before the relevant time frame. Mr. Swagerty does not assert claims against MJE.

in the first proceeding; (3) the same issue was actually litigated in the first proceeding; (4) that issue was necessary to the judgment; and (5) the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue. *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrev. Trust Dated June 27, 2002*, 410 F.3d 304, 310 (6th Cir. 2005) (citing *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir.), *cert. denied*, 543 U.S. 848 (2004)).

Several elements for issue preclusion are absent in this case. First, MJE was not a party to or in privity with a party to the collection actions. Michigan law is clear that attorneys are not in privity with their clients for preclusion purposes. *Williams v. Logan*, 184 Mich. App. 472, 478-79 (1990). Failure to meet this element alone defeats any preclusion based on the collection judgments.

Second, the judgment interest rate was not actually litigated in the collection lawsuits. As the Sixth Circuit has acknowledged:

> Michigan courts have held that "[a] question has not been actually litigated until put into issue by the pleadings, submitted to the trier of fact for a determination, and thereafter determined." *VanDeventer v. Mich. Nat'l Bank*, 172 Mich. App. 456, 432 N.W.2d 338, 341 (1988). The courts have held that an issue which was uncontested or indirectly referenced in the prior judgment was not actually litigated for collateral estoppel purposes. *See*, *e.g.*, *Lichon v. Am. Universal Ins. Co.*, 436 Mich. 408, 459 N.W.2d 288, 295 (1990) (holding that an underlying issue was not actually litigated in a prior criminal trial where the party entered plea of nolo contendere); *Cogan v. Cogan*, 149 Mich. App. 375, 385 N.W.2d 793, 795 (1986) (holding the issue of paternity was not actually litigated in the original divorce proceeding which awarded child support).

10

*Spectrum Health*, 410 F.3d at 310-11.

The judgment interest rate was never put into issue by the pleadings in the collection actions. It was never submitted to any trier of fact for determination. There was no opportunity for Plaintiffs to challenge this amount prior to entry of judgment, *see* M.C.R. 2.603(B)(3), and the judgment interest rate necessarily went uncontested and was never actually litigated.

MJE hopes through its motion to convince the Court that the excessive rate it used to calculate debt amounts in recent garnishment requests was decisively and permanently established at an earlier point in the collection actions. Much as MJE attempts to avoid it, that is a question of issue preclusion. MJE cannot demonstrate that the elements for issue preclusion have been met with respect to the judgment interest rate. The collection judgments did not establish the correct interest rate and are not the basis for accrual of Plaintiffs' FDCPA claims against MJE.

**B. MJE Committed Distinct Violations of the FDCPA During the Twelve Months Prior to the Filing of Plaintiffs' First Amended Complaint.**

Each communication MJE made that included unlawful interest amounts is independently actionable. Many of those communications were made in the one (1) year prior to the filing of the First Amended Complaint, and FDCPA claims based on those communications are not barred by the statute of limitations.

FDCPA claims that accrued less than one (1) year prior to the filing of the complaint are not barred by its statute of limitations. 15 U.S.C. § 1692k(d). An action based on any discrete act that violates the FDCPA within the limitations period, including individual false representations regarding the same purported debt, is not barred. *Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x. 297, 299, 301, 303 (6th Cir. 2008) (Ex. 1) (citing, *inter alia*, *McCorriston v. L.W.T., Inc*., 536 F. Supp. 2d 1268, 1272 (M.D. Fla. 2008); *Kaplan v. Assetcare, Inc*., 88 F. Supp. 2d 1355, 1360 (S.D. Fla. 2000); *Pittman v. J.J. MacIntyre Co*., 969 F. Supp. 609, 611 (D. Nev. 1997)).

*Purnell* shows why claims based on MJE's communications to the state courts and to Plaintiffs after April 10, 2016 are not barred. In that case, the defendant debt collector began collection efforts regarding a purported debt four (4) years before an eventual lawsuit was filed. *Id*. at 298. The plaintiff disputed the debt and denied that he owed it. *Id*. Without first verifying the debt as required by the FDCPA, the debt collector proceeded to send several collection letters and place several phone calls to the plaintiff over the next three (3) years. *Id*. Subsequently, **both before and within** the one (1) year prior to the filing of the plaintiff's complaint, the debt collector reported the purported debt to Equifax on a monthly basis. *Id*. Reversing the trial court, the Sixth Circuit held that each of the monthly communications by the debt collector of allegedly false debt information to Equifax was a "discrete

violation of the FDCPA within the limitations period" to the extent that particular communication was made within one (1) year prior to the filing of the complaint. *Id.* at 301, 303.

*Purnell* makes clear that even where a debt collector has previously communicated **precisely the same** false debt information in separate communications both before and within the one (1) year period preceding the complaint, claims based on the communications occurring within that period are not barred by the statute of limitations. *Id.*; *see also In re: FDCPA Cognate Cases*, 2016 WL 1273349, *8 (W.D. Mich. May 15, 2018) (Ex. 2) (denying summary judgment to debt collector alleged to have included the same unlawful costs in garnishment forms filed both before and within the limitations period, because the contested costs "were included in requests and writs for garnishment filed within the limitations period.").

Plaintiffs' claims are likewise not barred, but for a stronger reason yet: each new request and writ for garnishment filed by MJE included a new, increased excessive amount of post-judgment interest. (*Compare* ECF No. 5-8, PageID.74, showing $773.43 in interest, *to* ECF No. 5-9, PageID.76, showing $850.05 in interest; *compare* ECF No. 5-14, PageID.89, showing $1,078.51 in interest, *to* ECF No. 5-15, PageID.91 showing $1,176.64 in interest, *and* ECF No. 5-16, PageID.93, showing $1,219.00 in interest; *compare* ECF No. 5-21, PageID.105, showing

13

$11,766.70 in interest, *to* ECF No. 5-22, PageID.107, showing over $13,130 in interest; *compare* ECF No. 5-41, PageID.149, showing $2,784.09 in interest, *to* ECF No. 5-42, PageID.151, showing $3,035.58 in interest.) MJE's communications within the FDCPA limitations period were thus not simply new communications with the same false information; they offered **new false information** regarding Plaintiffs' debts to the state courts and to Plaintiffs that had never before been communicated to them outside the limitations period.[3] These are clearly discrete violations not barred by the statute of limitations.[4]

---

[3] These communications violated 15 U.S.C. § 1692e(2)(A), (8) and (10). Likewise, MJE collected and attempted to collect new unlawful amounts each time it filed a new garnishment form, in violation of 15 U.S.C. § 1692f(1).

[4] *Slorp v. Lerner, Sampson & Rothfuss* does not support MJE's assertion that Plaintiffs' claims are time-barred. In that case, the entire basis for the plaintiff's FDCPA claim was the alleged wrongful **initiation** of a foreclosure suit. 587 F. App'x. 249, 251 (6th Cir. 2014). That suit had been initiated more than one (1) year prior to the filing of the FDCPA complaint. *Id*. The court found that later litigation activity during the limitations period simply reaffirming the legitimacy of the foreclosure suit was not independently actionable. *Id*. at 259. At the same time, the court in *Slorp* recognized that "[a] plaintiff who alleges several FDCPA violations, some of which occurred within the limitations period and some of which occurred outside that window, will be barred from seeking relief for the untimely violations, but that plaintiff may continue to seek relief for those violations that occurred within the limitations period." *Id*. at 259 (citing *Purnell*, 303 F. App'x. at 301). That is precisely what Plaintiffs are doing. Here, each false and misleading communication and collection attempt by MJE is discrete and independently actionable. Those violations falling within the limitations period are not barred. The subsequent case *Smith v. Lerner, Sampson, & Rothfuss*, 658 F. App'x. 268 (6th Cir. 2016), which merely repeats the same rule stated in *Slorp*, does not suggest otherwise.

MJE's statute of limitations defense cannot be squared with either the underlying facts of this case, or Sixth Circuit authority. MJE's Motion should be denied.

### III.  PLAINTIFFS' CLAIM UNDER THE MRCPA DOES NOT RAISE A NOVEL OR COMPLEX ISSUE OF STATE LAW.

There are no novel or complex issues of Michigan law raised in Plaintiffs' First Amended Complaint. Plaintiffs' MRCPA claim—the only claim in this case not subject to original federal-question jurisdiction—could not be simpler. It is a matter of applying the facts to unambiguous statutory language. MJE's contention that some novelty or complexity warrants declining supplemental jurisdiction is without merit and should be rejected.

### A. The Only Relevant State-Law Question Is a Straightforward Application of the MRCPA to Defendants' Practice of Systematically Overcharging Plaintiffs and the Class.

There are two issues of Michigan law relevant to Plaintiffs' claims against MJE: (1) whether MJE charged greater interest to Plaintiffs than allowed under M.C.L. § 600.6013, and (2) if so, whether MJE violated the MRCPA. The first question cannot be avoided through declining supplemental jurisdiction, because that question is foundational to Plaintiffs' federal claim under the FDCPA, 15 U.S.C. §§ 1692e and 1692f. In other words, regardless of whether the Court maintains or declines supplemental jurisdiction, M.C.L. § 600.6013 must be applied to resolve

the federal question.[5] Thus, the **only** relevant question for purposes of supplemental

jurisdiction is whether the MRCPA provides a remedy. It clearly does.

The Sixth Circuit has acknowledged the striking similarity of the prohibitions

in the MRCPA and FDCPA. "The FDCPA contains language that is very similar to

that found in the M[R]CPA. Section 1692e [of the FDCPA] for example, states that

'[a] debt collector may not use any false, deceptive, or misleading representation or

means in connection with the collection of any debt.'" *Gamby v. Equifax Info. Servs.,*

*LLC*, 462 F. App'x 552, 556 n.5 (6th Cir. 2012). Similarly, the MRCPA prohibits,

*inter alia*:

> (e) Making an inaccurate, misleading, untrue, or deceptive statement or
> claim in a communication to collect a debt or concealing or not
> revealing the purpose of a communication when it is made in
> connection with collecting a debt.

> (f) Misrepresenting in a communication with a debtor 1 or more of the
> following:

>> (i) The legal status of a legal action being taken or threatened.

>> (ii) The legal rights of the creditor or debtor.

M.C.L. § 445.252. Federal courts have deemed the MRCPA and FDCPA

prohibitions so analogous that decisions interpreting and applying the FDCPA may

---

[5] Arguably, the Sixth Circuit has already resolved this question, finding that 13%
was "the maximum interest rate allowed for a judgment 'rendered on a written
instrument evidencing indebtedness with a specified [or variable] interest rate,'
M.C.L. § 600.6013(7). But the underlying judgments here were not so rendered."
951 F.3d at 401. That answers the only substantial question of state law raised in this
case.

be used to interpret and apply the MRCPA. *See, e.g.*, *Gamby*, 462 F. App'x at 556;

*Walker v. Shermeta, Adams, Von Allmen, PC*, 623 F. App'x 764, 768 (6th Cir. 2015)

("The requirements of a successful claim under the Michigan Collection Practices

Act mirror the FDCPA"); *Mielke v. Bank of Am. Home Loans*, 2011 WL 1464848,

*3 (E.D. Mich. Apr. 18, 2011) (Ex.3); *Currier v. PDL Recovery Group, LLC*, 2017

WL 712887, *20 (E.D. Mich. Feb. 23, 2017) (Ex. Currier); *Dahl v. First Franklin

Loan Servs*., 2014 WL 6686769, *6 (E.D. Mich. Nov. 26, 2014) (Ex. 5); *Thompke

v. Fabrizio & Brook, P.C*., 261 F. Supp. 3d 798, 811 (E.D. Mich. 2017) . The *Mielke*

decision puts the issue succinctly:

> Because the Michigan provision closely mirrors the federal exclusion,
> interpretations of the federal statute provide highly persuasive,
> although not binding, authority. *Dana v. Am. Youth Found*., 257 Mich.
> App. 208, 215 (2003). Many courts have acknowledged the similarities
> between the FDCPA and the M[R]CPA.

2011 WL 1464848 at *3 (additional citations omitted).

Here, the application of the MRCPA is supported by overwhelming authority.

First, communicating legally unjustified debt amounts, and collecting or attempting

to collect those amounts, are obvious violations under the plain terms of M.C.L. §

445.252(e) and (f). Second, overcharging debtors by imposing excessive interest

rates violates the analogous FDCPA sections. *Stratton v. Portfolio Recovery Assocs*.,

*LLC*, 770 F.3d 443, 451 (6th Cir. 2014) (citing, *inter alia*, 15 U.S.C. §§ 1692e,

1692f). Plaintiffs' MRCPA claim is thus neither novel nor complex. It tracks both

the plain statutory language and binding authority interpreting and applying the FDCPA.

Although MJE argues otherwise, whether MJE is a "regulated person" under the MRCPA is not a novel or complex issue. Michigan federal courts have held on numerous occasions that collection law firms such as MJE—including MJE itself— are "regulated persons." *See, e.g., Martin v. Trott Law, P.C.*, 198 F. Supp. 3d 794, 811 (E.D. Mich. 2016) (a "law firm and its employees 'fit squarely within the definition of a regulated person' under the M[R]CPA") (citing *Carpenter v. Monroe Fin. Recovery Grp., LLC*, 119 F. Supp. 3d 623 (E.D. Mich. 2015); *Wilson v. Trott Law, P.C.*, 118 F. Supp. 3d 953 (E.D. Mich. 2015); *Ward v. G. Reynolds Sims & Assocs.*, 2013 WL 360312 (E.D. Mich. Jan. 30, 2013) (Ex. 6); *Newman v. Trott & Trott P.C.*, 889 F. Supp. 2d 948 (E.D. Mich. 2012); *Misleh v. Timothy E. Baxter & Assocs.*, 786 F. Supp. 2d 1330 (E.D. Mich. 2011); *McKeown v. Mary Jane M. Elliott P.C.*, 2007 WL 4326825 (E.D. Mich. Dec. 10, 2007) (Ex. 7)). These decisions are in keeping with both the plain terms of the MRCPA, M.C.L. § 445.251(g), and the well-established rule that **any entity** collecting a consumer debt in the State of Michigan is either a "collection agency" under M.C.L. § 445.251(b), or a "regulated person" under M.C.L. § 445.251(g). *Gradisher v. Check Enforcement Unit, Inc.*, 133 F. Supp. 2d 988, 992-93 (W.D. Mich. 2011) ("under the MCPA, anyone who collects debts is either a 'collection agency' or a 'regulated person.'"); *Misleh*, 786 F. Supp.

18

2d at 1337 ("the courts have recognized that a person or entity engaged in debt collection activities is either a 'collection agency' under the Occupational Code or a 'regulated person' under the MCPA, but not both.") Law firms are specifically excluded from the definition of "collection agency," M.C.L. § 339.901(b)(xi), and specifically included in the definition of "regulated person," M.C.L. § 445.251(g)(xi).[6]

Plaintiffs' MRCPA claim, which is the only claim against MJE at issue that is subject to supplemental jurisdiction under 28 U.S.C. § 1367, is not "novel or complex." It does not provide a basis for declining supplemental jurisdiction, and MJE's Motion must therefore be denied.

---

[6] For the proposition that the "regulated person" status of law firms is unsettled, MJE cites *Stolicker v. Muller, Muller, Richmond, Harms, Myers, and Sgroi, P.C.*, the sole outlier on this issue. 2005 WL 2180481 (W.D. Mich. Sept. 9, 2005). (ECF No. 56-4) The *Stolicker* decision, which rests on the misconception that a law firm must be engaged in collection of debts owed to it to be a "regulated person," ignores the clear intent of the MRCPA to regulate collection law firms as well as the clear intent of Michigan's legislature to regulate **all** persons collecting consumer debts as either "collection agencies" or "regulated persons." In short, the fact that *Stolicker*, an unpublished and nonbinding opinion, was wrongly decided does not render the "regulated person" issue novel or complex. Indeed, as Judge Bell, who penned the *Stolicker* decision, later acknowledged, "courts have recognized that a person or entity engaged in debt collection activities is either a 'collection agency' under the Occupational Code or a 'regulated person' under the [MRCPA], but not both." *Dubridge v. Ocwen Loan Servicing*, 2014 WL 1878770, *4 (W.D. Mich. May 12, 2014) (Ex. 8) (quoting *Newman*, 889 F. Supp. 2d at 966).

### B. The Unavoidable Issue of Whether Defendants Charged Excessive Interest under Michigan's Post-Judgment Interest Statute Also Lacks Novelty or Complexity.

MJE's suggestion that the application of Michigan's post-judgment interest statute presents a novel or complex issue of state law is both irrelevant and incorrect. In the recent appeal, the Sixth Circuit did not struggle to find that MJE's collection actions were not based on a written instrument and did not merit the higher judgment interest rate allowed under M.C.L. § 600.6013(7). *VanderKodde*, 951 F.3d at 401.

The question is simple: whether the post-judgment interest rate on judgments that MJE has admitted were "not based on a note or other written evidence of indebtedness" (ECF No. 5-2; ECF No. 5-17; ECF No. 5-24) are limited to the rate specified in M.C.L. § 600.6013(8).[7] Putting aside that the Sixth Circuit has already demonstrated the simplicity of the analysis here, a similar issue was raised before and answered by the Michigan Supreme Court in *Wyandotte Electrical Supply Co. v. Electrical Technology Systes, Inc.*, 499 Mich. 127, 152-53 (2016). In *Wyandotte*, the parties disputed whether post-judgment interest was properly calculated using

---

[7] Contrary to MJE's assertion, Plaintiffs have not stated and need not demonstrate that the collection lawsuits MJE filed were based only on an "account stated" cause of action. Plaintiffs need only demonstrate that the judgments in those lawsuits were **not** "rendered on a written instrument evidencing indebtedness with a specified interest rate." M.C.L. § 600.6013(7). MJE's suggestion that Plaintiffs' claims are somehow based on a new rule established in *Fisher Sand & Gravel v. Sweebe*, 494 Mich. 543 (2013), regarding "account stated" actions, is wrong.

the rate provided in M.C.L. § 600.6013(7), or the lower default rate provided in M.C.L. § 600.6013(8). Although a contract existed between the plaintiff and one of the defendants, the plaintiff's suit was based on provisions of the Public Works Bond Act that created a cause of action for nonpayment of public works subcontractors. 499 Mich. at 152-53. The court held that because the plaintiff's "underlying claim was not a contract claim," the judgment was not "rendered on" a written agreement at all. *Id*. As a result, post-judgment interest at the rate provided in M.C.L. § 600.6013(7) was contrary to law, and the "[i]nterest on the judgment should instead be calculated under M.C.L. § 600.6013(8), the general rule for interest on a money judgment in a civil case." *Id*. at 153.[8]

MJE knew the claims it brought against Plaintiffs were not based on a "written instrument evidencing indebtedness with a specified interest rate." MJE

---

[8] Four concurring justices in *Wyandotte* also would have found the Section 600.6013(7) interest rate excessive, but for a different reason: the "written instrument" on which the judgment was purportedly rendered did not "evidence indebtedness," because nothing was owed on the construction project at the time the agreement was entered. *Id*. at 166. This reasoning would apply equally in the present case, in which the only conceivable "written instrument" would be a credit card account agreement entered into before the existence of any indebtedness. A fifth concurring justice found M.C.L. § 600.6013(7) inapplicable because any "written instrument" did not contain a "specified interest rate." *Id*. at 175. Again, the same reasoning would apply here. However, both of these questions are moot given (1) MJE's express disclaimer that its judgments were based on a written instrument (ECF No. 5-2; ECF No. 5-17; ECF No. 5-24), and (2) that the allegations of MJE's collection complaints do not mention breach of contract, attach or reference any written agreement or interest rate, or include sufficient elements to support such a claim (ECF No. 5-1; ECF No. 5-10; ECF No. 5-17; ECF No. 5-23; ECF No. 5-33).

unequivocally represented as much to the state courts. The Michigan Supreme Court has held that when a judgment is not based on a written instrument, the correct post-judgment interest rate is provided in M.C.L. § 600.6013(8), not M.C.L. § 600.6013(7). *Wyandotte*, 499 Mich. at 153. MJE cannot now reverse course, claim that its complaints were somehow based on undisclosed written instruments, and thereby introduce a purportedly novel or complex issue of state law. No such issue exists in this case.

## IV. THERE ARE NO EXCEPTIONAL CIRCUMSTANCES OR COMPELLING REASONS FOR DECLINING JURISDICTION.

Michigan's district courts have exercised supplemental jurisdiction over MRCPA claims brought concurrently with FDCPA claims innumerable times. (*See* cases cited *supra* at pp. 5-6.) There is no special reason to decline jurisdiction over such claims in this case. MJE's claim that Plaintiffs' purported inability to bring a state-court class action under the MRCPA is an "exceptional circumstance" does not hold water for two reasons. First, Plaintiffs could in fact bring such a state-court class action, because their MRCPA claim is based on actual damages and class treatment is therefore not barred under the Michigan Court Rules. Second, the Michigan Court Rules could not preclude class treatment in this case under Federal Rule of Civil Procedure 23 in any event. In addition, there is effectively no chance that inclusion of Plaintiffs' MRCPA claim in this case would cause any confusion

to prospective jurors, because the evidence and proofs necessary to establish liability under that claim are identical to those relevant to Plaintiffs' FDCPA claim.

### A. The Michigan Court Rules Would Not Bar Plaintiffs from Pursuing Their MRCPA Claim as a Class Action in State Court.

MJE's contention that Michigan courts do not allow class actions based on the MRCPA glosses over the applicable court rule as well as Plaintiffs' claim for relief. MJE is simply wrong. Plaintiffs' MRCPA claim is based on actual damages, not a penalty or minimum amount of damages irrespective of actual damages. Thus, no procedural rule would prevent Plaintiffs from bringing this claim as a class action in state court.

Michigan Court Rule 3.501(A)(5) provides:

> An action for a penalty or minimum amount of recovery **without regard to actual damages** imposed or authorized by statute may not be maintained as a class action unless the statute specifically authorizes its recovery in a class action.

(emphasis added). Here, Plaintiffs can and do claim actual damages stemming from MJE's violations of the MRCPA (ECF No. 5, PageID.53), and those actual damages are clearly allowed by the MRCPA, M.C.L. § 445.257(2).

The court rule was designed to limit class actions seeking only penalties "without regard to actual damages," i.e., where actual damages are not sought. Here, Plaintiffs allege as the basis for relief under the MRCPA that MJE and the other Defendants actually collected money to which they were not entitled. The Michigan

Court Rules would not prevent Plaintiffs from seeking such actual damages under the MRCPA in a class action.

### B. This Court Can and Should Maintain Jurisdiction and Certify the MRCPA Class under Federal Rule of Civil Procedure 23.

Any Michigan Court Rule restricting class actions in state courts does not apply in federal court and does not constitute an exceptional circumstance or compelling reason for this Court to decline jurisdiction. Thus, even if the Court were convinced that Michigan state courts would not certify a class action based on Plaintiffs' MRCPA claim, it would make no difference in whether that claim ought to be included in and decided with this case. Indeed, every practical consideration favors litigating the FDCPA and MRCPA claims in this case.

In *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, the U.S. Supreme Court granted certiorari to determine whether a New York court rule disallowing class actions for a "penalty, or minimum measure of recovery created or imposed by statute" meant that a class action seeking such a recovery under a New York statute could not be maintained in federal court. 559 U.S. 393, 397 (2010). Based on the state court rule, the district court had dismissed the case for lack of jurisdiction, and the Second Circuit had affirmed. *Id*. at 397-98. Reversing the Second Circuit, the Supreme Court held that Federal Rule of Civil Procedure 23 provided the applicable rule and was unaffected by the New York court rule. *Id*. at 398-400 ("like the rest of the Federal Rules of Civil Procedure, Rule 23

*automatically* applies 'in all civil actions and proceedings in the United States district courts.'") (citing Fed. R. Civ. P. 1; *Califano v. Yamasaki*, 442 U.S. 682, 699-700 (1979)). The court held that a Rule 23 class action could be maintained in federal court regardless of whether the court rule disallowing such class actions in state court was "procedural" or "substantive" in nature. *Id*. at 407-10. In sum:

> [D]ivergence from state law, with the attendant consequence of forum shopping, is the inevitable (indeed, one might say the intended) result of a uniform system of federal procedure. Congress itself has created the possibility that the same case may follow a different course if filed in federal instead of state court. *Cf. Hanna* [*v. Plumer*], 380 U.S. [460,] 472-473, 85 S.Ct. 1136 [(1965)]. The short of the matter is that a Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping. To hold otherwise would be to "disembowel either the Constitution's grant of power over federal procedure" or Congress's exercise of it. *Id*. at 473-474, 85 S.Ct. 1136.

*Shady Grove*, 499 U.S. at 416. The court remanded for further proceedings consistent with its holding that the case could proceed as a class action in federal court notwithstanding that it could not have been brought in New York state court. *Id*.

The Michigan Court Rule pointed out by MJE is effectively identical to the New York rule addressed in *Shady Grove*. Like that rule, it disallows certification of class actions in Michigan courts based on imposition of a penalty or minimum recovery provided by statute. And like that rule, the Michigan Court Rule **has no applicability** in this federal case. In its Motion, MJE invites this Court to make the

same error the Second Circuit made in *Shady Grove*: dismissing claims for lack of jurisdiction on the basis of an inapplicable state court rule. The Court should not do so.

### C. Jury Confusion Is Not a Significant Concern where the FDCPA and MRCPA Provisions at Issue Are Effectively Identical.

The FDCPA claim over which this Court has original jurisdiction is an "analogous federal statute" to the MRCPA over which the Court has supplemental jurisdiction. *Mielke*, 2011 WL 1464848 at *3. Michigan federal courts in numerous cases have made similar determinations on MRCPA issues. (*See* cases cited *supra* at III.A.) Both statutes prohibit making false or misleading representations in connection with the collection of debts. 15 U.S.C. § 1692e; M.C.L. § 445.252(e). Both statutes were violated at the same time by the same conduct of the Defendants. A jury could easily be instructed, without confusion, as to the factual findings needed to establish liability, because those findings are identical with respect to the FDCPA and MRCPA claims in this case. Two simple additional jury instructions would suffice to account for the differences in FDCPA and MRCPA liability: (1) the MRCPA, unlike the FDCPA, does not provide a "bona fide error" defense, *Gamby*, 462 F. App'x at 556-57; and (2) in the case of willful violations, the MRCPA provides for treble actual damages, M.C.L. § 445.257(2). There is no "compelling reason" to believe a jury would be confused if charged with making findings regarding liability and damages under both the FDCPA and MRCPA.

## V.   MAINTAINING SUPPLEMENTAL JURISDICTION BEST SERVES JUDICIAL ECONOMY, FAIRNESS, AND CONVENIENCE AND CONSERVES PARTY AND JUDICIAL RESOURCES.

The state and federal claims presented in this case involve the same facts and the same legal issues. For that reason, as this Court has previously recognized, economy, convenience, fairness, and comity all weigh in favor of maintaining supplemental jurisdiction, and are compelling reasons to deny MJE's Motion:

> The Supreme Court has directed the district courts to exercise supplemental jurisdiction in a manner that best serves the principles of economy, convenience, fairness, and comity that underlie the doctrine. *See City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 172-73, 118 S. Ct. 523, 139 L. Ed. 525 (1997). These principles all weigh in favor of adjudicating all claims in this case in a single forum, as the claims are interdependent and interrelated. Splitting the case into two lawsuits in two courts would not serve economy, convenience or fairness. The rule's general purpose is to "adjudicate interrelated matters in one litigation, so as to obtain consistent and fair results for the parties and avoid duplication of efforts for the courts." *Certain Interested Underwriters* [*at Lloyd's v. Gulf Nat. Ins. Co.*], 898 F. Supp. [381,] 384 [(N.D. Miss. 1995)].

*Glover v. Nationwide Mut. Fire Ins. Co.*, 676 F. Supp. 2d 602, 621 (W.D. Mich. 2009). Where, as here, the claims involve the same evidence and legal issues, judicial economy warrants retention of the state claim even if the federal claims have been dismissed. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). Where a violation of a state consumer collection practices act depends on the same facts constituting an FDCPA violation, it is appropriate to maintain supplemental jurisdiction in the interest of economy and fairness. *Mann v. Acclaim Fin. Servs.*,

*Inc.*, 232 F.R.D. 278, 286 (S.D. Ohio 2003) (citing 28 U.S.C. § 1367(c)); *accord*.
*Litt v. Midland Credit Mgmt.*, 2014 WL 1977137, *4 (E.D. Mich. May 13, 2014)
(Ex. 9) (maintaining supplemental jurisdiction over MRCPA claims).

If the Court concludes that MJE misrepresented the amounts of Plaintiffs'
debts and collected and attempted to collect amounts not lawfully owed by Plaintiffs
and thereby violated the FDCPA, it follows inextricably that MJE thereby violated
the MRCPA. It would be an incredible waste of time and resources to reassert and
retry the latter issue in a separate lawsuit. The Court should deny MJE's Motion and
maintain supplemental jurisdiction over Plaintiffs' MRCPA claim.

## CONCLUSION

The statute of limitations for each FDCPA violation alleged in the
Complaint—MJE's communication of false debt amounts through (among other
things) garnishment requests—runs from the date of that violation. Each
garnishment request represents a discrete violation with its own accrual date. The
statute of limitations does not bar Plaintiffs' FDCPA claims.

Much as MJE would like to limit its liability to Plaintiffs to the shorter
limitations period provided in the FDCPA, rather than the six-year period provided
in the MRCPA, that is not a sufficient reason for the Court to decline to exercise
supplemental jurisdiction. MJE will have to deal with its liability under the MRCPA,

in this or another forum, and there is no practical or other reason for this Court to decline supplemental jurisdiction.

MJE's Motion should be denied in its entirety.

Respectfully submitted,

Dated: May 8, 2020

/s/ Theodore J. Westbrook
Theodore J. Westbrook (P70834)
**Westbrook Law PLLC**
Attorney for Plaintiffs
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 288-9548
twestbrook@westbrook-law.net

Phillip C. Rogers (P34356)
Kevin J. Rogers (P81303)
**Law Office of Phillip C. Rogers**
Attorneys for Plaintiffs
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 776-1176
ConsumerLawyer@aol.com
RogersAttorney@gmail.com

29

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing document meets the type volume requirements of L. Civ. R. 7.2(b) because it contains 7,238 words as counted using the "word count" function of the Microsoft Word (Version 2003) software used to prepare the document.


Dated: May 8, 2020 /s/ Theodore J. Westbrook
Theodore J. Westbrook (P70834)
**Westbrook Law PLLC**
Attorney for Plaintiffs
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 288-9548
twestbrook@westbrook-law.net