UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL VANDERKODDE, *et al.*,                )
                            Plaintiffs,        )
                                               )        No. 1:17-cv-203
-v-                                            )
                                               )        Honorable Paul L. Maloney
MARY JANE ELLIOTT, P.C., *et al.*,            )
                            Defendants.         )
                                               )

## OPINION AND ORDER GRANTING MOTION TO DISMISS

Various creditors obtained judgments against the named Plaintiffs in the state courts. This lawsuit arises from the efforts to collect on those judgments.  Plaintiffs claim that Defendants incorrectly calculated the interest owed on the judgments.  Plaintiffs plead that Defendants violated the Fair Debt Collection Practices Act (FDCPA) by falsely communicating that Plaintiffs owed more money than they actually owed and also by collecting or attempting to collect more money from Plaintiffs than the law allowed.  Plaintiffs have a pending motion for class certification.  Defendant Berndt & Associates moves to dismiss the claims brought against it by Plaintiff Ritchie Swagerty (ECF No. 175).  Defendant argues that Swagerty lacks standing because he cannot establish any monetary or other injury caused by Defendant.

I.

Article III, Section 2 of our Constitution provides that judicial power extends only to cases and controversies.  U.S. Const. Art. III § 2; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016).  Because of this constitutional restriction, our Supreme Court describes federal

courts "courts of limited jurisdiction." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019).   Standing implicates subject-matter jurisdiction and when a plaintiff lacks standing, the court lacks subject-matter jurisdiction over the lawsuit.  *Tennessee v. United States Dep't of State*, 931 F.3d 499,507 (6th Cir. 2019).

Defendant relies on Rule 12(b)(1) for this motion.[1]  A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual predicate for jurisdiction.  *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)); *see also DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  In a facial attack, the court accepts as true all the allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion.  *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325.  In a factual attack, the allegations

---

[1]     Rule 12(b) requires that motions brought under the subrule be "made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Defendant already filed its answer to the complaint (ECF No. 28), and filed an amended answer (ECF No. 40), and filed a Rule 12(b)(1) motion to dismiss (ECF No. 61).  Subject-matter jurisdiction, however, cannot be consented to or waived by the parties.  *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).  And, concerns about subject-matter jurisdiction may be raised at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).  Rule 12(h)(3) requires a court to dismiss an action when it concludes that it lacks subject-matter jurisdiction, which can occur "at any time." Fed. R. Civ. P. 12(h)(3).  When presented with a Rule 12(b)(1) filed after a responsive pleading or other Rule 12 motion, some courts simply ignore the timing requirement in the subrule as the timing requirement is inconsistent with binding precedent.  *See Shady Grove Orthopedic Assocs, PA v. Allstate Ins. Co.*, 559 U.S. 393, 418 (2010) (Stevens, J. concurring) ("Therefore, '[w]hen a situation is covered by one of the federal rules, ... the court has been instructed to apply the Federal Rule' unless doing so would violate the Act or the Constitution.") (quoting *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)).

in the complaint are not afforded a presumption of truthfulness and the district court weighs competing evidence to determine whether subject matter jurisdiction exists. *Id.*

## II.

## A.

Our Supreme Court describes the "'irreducible constitutional minimum' of standing" as comprising of three elements. *Spokeo*, 578 U.S. at 338. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). For the injury-in-fact element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).

A plaintiff does not meet the injury-in-fact requirement based solely on the violation of a statutory right even when the statute authorizes a person to sue to vindicate that right. *Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."). Therefore, violations of a statutorily-required procedure, "a bare procedural violation, divorced from any concrete harm," will not meet Article III's injury-in-fact requirement. *Id.*; *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).

To be "concrete," the injury must actually exist and must not be abstract. *Spokeo*, 578 U.S. at 340. Concrete injuries may, nevertheless, be intangible. *Id.* For intangible injuries to meet the constitutional injury-in-fact requirement, courts "consider whether the alleged intangible harm has a close relationship to a harm that has traditionally been regarded

as providing a basis for a lawsuit in English or American courts." *Id.* at 341.  A plaintiff need not identify an "exact duplicate in American history and tradition." *TransUnion*, 141 S. Ct. at 2204.  Harms or injuries that have been traditionally recognized as providing a basis for a lawsuit include the harm to reputation, the disclosure of private information and intrusion upon seclusion.  *Id.*

*TransUnion* illustrates the requirement for a concrete injury necessary for standing. The plaintiffs alleged a violation of the Fair Credit Reporting Act (FCRA), specifically the requirement in 15 U.S.C. § 1681e(b) to "follow reasonable procedures to assure maximum possible accuracy" of credit files.  *TransUnion*, 141 S. Ct. at 2208.  TransUnion is a credit reporting agency and it compiles personal and financial information about consumers (a consumer report) which it then sells to other entities.  *Id.*  The entities use the information in the consumer report when making financial decisions, such as making a loan.  *Id.*  In 2002, TransUnion began including in a consumer report whether the person's name appears on a list maintained by the Treasury Department's Office of Foreign Assets Control (OFAC). *Id.* at 2201.  The list identifies individuals who pose a threat to America's national security, including terrorists, drug traffickers and other serious criminals.  *Id.*  Unfortunately, many law-abiding citizens shared the first and last names of a terrorist, drug trafficker or serious criminal whose name was placed on the OFAC list.  *Id.*

In *TransUnion*, a class of over 8,000 individuals sued the credit reporting agency. The Court identified two groups, one group could identify a concrete harm and one group could not identify a concrete harm.  TransUnion disseminated consumer reports to third parties that contained misleading OFAC information affecting 1,853 individuals.

*TransUnion*, 141 S. Ct. at 2208.   The misleading information, information that suggested the individual was a threat to national security, bore a close relationship to the reputational harm associated with the tort of defamation.  *Id.*  TransUnion did not disseminate to third parties any misleading information about the other 6,332 members of the class.  *Id.* at 2209. TransUnion's consumer reports for those individuals contained misleading OFAC information, but that information was not disseminated or published to a third party.  *Id.* Historically, the tort of defamation requires publication, dissemination or distribution of some information.  *Id.*  Maintaining the misleading information in the consumer files might amount to a procedural violation of the FCRA, but without distribution of the information, the individual could not identify any concrete harm necessary for standing.  *Id.* at 2210.

Following *Spokeo* and *TransUnion*, several circuit courts have considered standing in lawsuits involving alleged violations of the FDCPA.  *See Bassett v. Credit Bur. Servs., Inc.,* 60 F.4th 1132, 1137-38 (8th Cir. 2023) (collecting cases).  The facts in *Bassett* illustrate the standing concerns relevant to this motion.  Bassett received a letter demanding payment for a medical bill.  The letter identified amounts owed without distinguishing between principle and interest.  And, the "amounts included interest on Bassett's debts for which assessing interest was disputed and legally uncertain."  *Id.* at 1134.  The Eighth Circuit considered whether Bassett suffered a concrete injury sufficient for standing.  Bassett received the letter but never paid any part of the principle or interest.  *Id.* at 1136.

The Eighth Circuit concluded that Bassett failed to establish that she suffered any harm that bore a close relationship to harms traditionally recognized by courts.  Bassett asserted that her harm was similar to the harm associated with the torts of fraudulent

misrepresentation and conversion.  But, fraudulent misrepresentation requires the claimant to show reasonable reliance on the misrepresentation.  *Bassett*, 60 F.4th at 1136.  And, conversion requires the claimant to show a wrongful deprivation of or interference with the claimant's property.  *Id.*  Bassett did not establish that she suffered any "type of injury that results from reliance on a misrepresentation or wrongful interference with property rights." *Id.* The court found that merely receiving a letter with misleading information, without more, did not meet the test for an injury-in-fact.  *Id.* at 1137.

B.

With this guidance in mind, the Court considers whether Swagerty has demonstrated a concrete injury necessary for standing.  As a plaintiff, Swagerty bears the burden of demonstrating that he has standing.  *TransUnion*, 141 S. Ct. at 2207-08; *Lujan*, 504 U.S. at 561.  Because Defendant relies on evidence outside the pleadings, Defendant has raised a factual challenge, not a facial challenge.

In the complaint (ECF No. 5), Plaintiffs plead that Swagerty's credit card account went into default and was purchased by Defendant LVNV (*id.* ¶¶107-08 PageID.31).  Defendant Elliott filed a debt collection lawsuit on behalf of LVNV against Swagerty (*id.* ¶ 110 PageID.31).  The court entered default judgment against Swagerty on July 17, 2008, for $1,583.69 (*id.* ¶ 111 PageID.31).  Defendant Berndt & Associates then filed eight requests and writs of garnishment between 2013 and 2016 (*id.* ¶¶ 113-130 PageID.32-36).  Plaintiffs plead that the requests and writs calculated post-judgment interest at rates not permitted by

statute (*id.* ¶¶131-32 PageID.36).   Plaintiffs contend that the 2016 request for writ of garnishment overstated the total debt by 1,310.88 (ECF No. 178 PageID.3192).[2]

Defendant contends that Swagerty cannot establish any concrete harm necessary for standing.  Defendant argues that Swagerty has not alleged that he paid more than he should have paid or even that he paid anything at all.  Defendant reasons that Swagerty cannot recover an actual damages because he cannot recall paying any money concerning the default judgment and is unaware whether any entity made payments upon receiving a writ of garnishment relative to the default judgment (ECF No. 175-3 Swagerty Dep. at 45-46 PageID.3153-54; at 55 PageID.3155).  Defendant also argues that Swagerty has not suffered any reputational harm because it is true that a default judgment entered against him and it is true that he owed money.  Defendant asserts that a misleading statement about how much money Swagerty owes does not amount to a concrete reputational harm.  Finally, Defendant points out that the ten-year statute of limitations on collecting the debt has expired because the default judgment was not renewed (ECF No. 175-4 Swagerty Register of Action).

Plaintiffs offer several arguments in response.  Most are variations of the same assertion that a false or misleading statement in a communication with a debtor is sufficient to establish standing.

First, Plaintiffs argue that "[n]umerous federal courts have held that a debt collector's overstatement of a consumer's debt in collection communications is **by itself** an 'injury in

---

[2]    In the response, Plaintiffs write that Defendant overstated the amount owed by "$1,3110.88" (ECF No. 178 at 3 PageID.3192).  That number appears to be a typo with an extra "1" added rather than a math error.

fact' conferring Article III standing" (ECF No. 178 at 5 PageID.3194).  Even if this statement accurately describes opinions issued prior to *Spokeo* and *TransUnion*, the continued usefulness of the holdings in those (unidentified) opinions are now in doubt.

Second, Plaintiffs contend that Swagerty can establish standing based on the risk of harm, citing *Macy v. GC Services Limited Partnership*, 897 F.3d 747 (6th Cir. 2018).  In *Macy*, the Sixth Circuit held that *Spokeo* identified two categories of statutory violations where a plaintiff would be able to establish standing:

> (1) where the violation of a procedural right granted by statute is sufficient in and of itself to constitute a concrete injury in fact because Congress conferred the procedural right to protect a plaintiff's concrete interests and the procedural violation presents a material risk of real harm to that concrete interest; and (2) where there is a "bare" procedural violation that does not meet this standard, in which case a plaintiff must allege "*additional* harm beyond the one Congress has identified."

*Id.* at 756 (quoting *Spokeo*, 578 U.S. at 341-42).  The Sixth Circuit has since recognized that *TransUnion* abrogated the first category described in *Macy*.  *Ward v. Nat'l Patient Account Servs. Sols., Inc.*, 9 F.4th 357, 361 (6th Cir. 2021).  The risk of harm does not establish standing, instead "plaintiff must demonstrate that the 'risk of future harm materialized,' or that the plaintiffs' were independently harmed by their exposure to the risk itself.'"  *Id.* (quoting *TransUnion*, 141 S. Ct. at 2211).

Third, Plaintiffs argue that Swagerty's harms stem from (1) overstatements of debt in communications to courts and garnishees; and (2) attempt to collect debts in amounts not allowed.  For this argument, Plaintiffs cite *Martin v. Trott Law, PC*, 265 F. Supp. 3d 731 (E. D. Mich. 2017).  The standing and concrete injury discussion in *Martin* relies on the "risk of real harm" language found in *Spokeo*.  *Id.* at 747-48.  The court summarized the risks a

defendant faces with presented with deceptive and inaccurate information. *Id.* The *Martin* opinion issued several years before the Supreme Court issued *TransUnion* and also before the Sixth Circuit issued *Ward.* This Court concludes that the holdings in *TransUnion* and *Ward* undermine entirely the conclusion in *Martin* about standing. Plaintiff makes no attempt to show how *Martin* could be reconciled with *TransUnion* and *Ward.* Plaintiffs also cite *Garland v. Wells Fargo Home Mortgage Incorporated*, 303 F. Supp. 3d 554 (E. D. Mich. 2017). *Garland* found standing based solely on a letter demanding an amount that was different from and greater than the sum owed. *Id.* at 560. *Garland* relies on opinions issued before *TransUnion* and *Ward* concerning standing for alleged violations of the FDCPA. *Id.* at 560-61. Again, this Court finds that *TransUnion* and *Ward* undermine the usefulness of *Garland* for establishing standing.

Fourth, Plaintiffs contend the harm from misstatements about the amount of debt owed bears a close relationship to the harms from the common-law tort of fraud, citing *Pastian v. Internal Credit Systems*, No. 3:17cv252, 2020 WL 6445836, at *10-*11 (S.D. Ohio Nov. 3, 2020. While fraud does require a false or material misrepresentation, the individual asserting common-law fraud must prove a harm based on his or her reliance on that misrepresentation. *See Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 761 N.W.2d 151, 165 (Mich. Ct. App. 2008). *Pastian* does not discuss or even consider whether the claimant established reliance on the alleged misrepresentation. Other courts have agreed that the tort of fraud would provide a proper analogy under *TransUnion* but conclude that the plaintiff failed to show any sort of reliance on the alleged misrepresentation. *See, e.g., Vaughn v. Fein, Such, Kahn & Shepard, P.C.*, No. 21-16013, 2022 WL 2289560, at *5 (D.N.J. June

24, 2022) (collecting cases); *Farmer v. Optio Sols. LLC*, No. , 2022 WL 3974261, at *5 (N.D. Cal. Aug. 31, 2022) (collecting cases).  At least one court has concluded that the reliance is "such an essential element of fraud" that it "must somehow be addressed in order to demonstrate a 'close relationship' to the injury" in order to establish standing for an FDCPA violation based on a false statement or misrepresentation.  *Pruitt v. Resurgent Capital Servs., LP*, 610 F. Supp. 3d 775, 781 (D. Md. 2022).  Because Plaintiffs do not plead that Swagerty relied on the misstatement about the amount of his debt, Plaintiffs have not established standing for Swagerty.

Fifth, Plaintiffs assert that the harms of a communication containing misrepresentations to a third-party are closely related to the harms of defamation.  The tort of defamation serves to protect an individual against injuries caused by the publication of falsehoods.  *Reighard v. ESPN, Inc.*, —N.W.2d—, 2022 WL 1513112, at *4 (Mich. Ct. App. May 12, 2022).  "A communication is defamatory if it tends to lower an individual's reputation in the community or deters third persons from associating or dealing with that individual.  However, not all defamatory statements are actionable." *Ireland v. Edwards*, 584 N.W.2d 632, 636 (Mich. Ct. App. 1998) (internal citation omitted).  The alleged misrepresentation concerns the amount of interest, not the existence of a default judgment or the fact that a debt has not been paid.  Plaintiffs have not established how the misrepresentations in the writs of garnishment in this case caused Swagerty any reputational harm or established how the misrepresentations deterred third parties from associating with him.

Finally, Plaintiffs argue that the holding in *TransUnion* establishes standing for Swagerty.    Plaintiffs reason that like the smaller group of plaintiffs in *TransUnion,* the misleading information about Swagerty was actually disseminated to third parties. Dissemination may be necessary, but it is not sufficient for a defamation-like harm.  Swagerty still must prove an injury from the distribution of misleading information.  The smaller group of plaintiffs in *TransUnion* could establish a concrete economic injury because "[i]t is generally unlawful to transact business with any person on the [OFAC] list." *TransUnion,* 141 S. Ct. at 2201 (citing 31 C.F.R. pt. 501, App. A (2020)).  The opinion even described how the dissemination of the misleading information affected the named plaintiff.   A car dealership refused to sell a vehicle to Sergio Ramirez because his TransUnion credit report indicated that his name matched a name on the terrorist list.  *Id.* at 2202.  Plaintiffs have not identified any such harm to Swagerty.

### III.

As a plaintiff, Ritchie Swagerty bears the burden of proving that he has standing to litigate his FDCPA claim.  Swagerty has neither pled nor established by evidence that he suffered any concrete injury.  A statutory violation of the FDCPA, for example a misleading communication about a debtor, without more, will not establish standing.  Plaintiffs generally rely on legal authority discussing the risk of injury, opinions that issued after *Spokeo, Inc. v. Robins* but before *TransUnion LLC v. Ramirez.*  The holding in *TranUnion* clarifies that a bare procedural statutory violation, without any actual harm, will not suffice for standing. The risk of some future harm is not enough.

## <u>ORDER</u>

For the reasons provided in the accompanying Opinion, the Court **GRANTS**

Defendant Berndt & Associates motion to dismiss (ECF No. 175).  **IT IS SO ORDERED.**

Date:    <u>March 31, 2023</u>                              <u> /s/  Paul L. Maloney </u>
                                                              Paul L. Maloney
                                                              United States District Judge